THATCHER *v.* KAUCHER.

ERROR — *in receiving evidence which does not mislead the jury.* In an action of trover, evidence of the value of the goods several months before the alleged conversion was first offered and received, and afterward other evidence as to such value at the time of the alleged conversion was given, by which the jury were governed.

*Semble,* that in receiving the first evidence of value there was no error which can be ground of reversal.

EVIDENCE — *as to value — knowledge of witness.*   Upon the question of value a witness who has made inquiry in the market where the conversion took place, as to the value of such goods in that market, may be asked to state it.

*As to agency — interview between principal and agent.*   In trover, for goods alleged to have been sold to the defendant, without authority from the plaintiff, by one in whose care they had been left, the plaintiff may show what instructions he gave to his agent at the time the goods were committed to the care of the latter.

TROVER — *what shall be a defense.*   In such action evidence tending to prove that the agent sold some of the goods to others, claiming them as his own, is no defense, the question being whether he had authority from the plaintiff to sell.

PRINCIPAL AND AGENT — *authority of agent to sell goods.*   Where one was left in charge of a large quantity of goods, with instructions to sell so much thereof as should be necessary to pay the agent's board; *semble,* that the agent had no authority to sell the whole quantity *en masse,* and that, upon sale thereof in that way, the owner may maintain trover against the purchaser.

INSTRUCTIONS — *should be confined to matters in issue.*   The court cannot be required to charge the jury upon matters which are not presented in the evidence.

## *Appeal from District Court, Arapahoe County.*

DECLARATION in trover to recover the value of 45 packages or barrels of bourbon whisky, alleged to be worth $3,500.   Plea: Not guilty.   At the trial the plaintiff gave evidence tending to prove that he stored a quantity of whisky in a building in Denver, and left it in charge of one Minch, with instructions to unbung the barrels daily, and to move them to and fro for the purpose of improving them. That Minch being without means, the plaintiff gave him the privilege to sell enough of the whisky to pay his board ; that no other or further authority was given to Minch; that the whisky was so left in care of Minch on the 24th of December, 1872, and that in March, 1873, Minch sold to the defendant 45 barrels of the whisky, which defendant removed to a commission house, and sold at prices ranging from $1.50 to $2.00 per gallon.   There was much evidence as to the value of the whisky.   The plaintiff himself was the first witness, and before any evidence was given as to the date of the alleged conversion, plaintiff's counsel asked the following question :

"State what means of knowledge you had for knowing the value of such liquor at this point at the time you left the liquor?"

Defendant objected that the time specified did not appear to be the date of conversion. The objection was overruled, and the witness answered that he had inquired of dealers as to the prices of such liquors.

Plaintiff's counsel then asked the following question:

"Did, or did not these men at that time, after your telling them the quality and character of this liquor, fix a market value for it?" Upon objection the court ruled the question improper and said: "I think that if, by inquiry in this market, he ascertained the rate at which whiskies were selling at that time, he can state it." Thereupon the witness stated, apparently in answer to the question as proposed by the court, "I did by inquiry; the market rate at which whiskies were selling at that time was $1.75 per gallon." Another witness, Mr. Mahar, the commission merchant who sold the whisky for defendant, was asked to state what it was worth by the gallon or by barrel in the market? To this defendant's counsel objected generally, and the court overruled the objection. The witness answered that he sold the whisky for $1.50 to $2 the gallon. The plaintiff called Joseph Bloom, and inquired of him what authority he, the plaintiff, gave to Minch, on the day the plaintiff left Denver? To this the defendant objected generally, and the objection was overruled. The witness answered that Minch was instructed to sell no more than to pay his board, and to take care of the whisky. Other witnesses were asked to state the value of the whisky per gallon, to which the defendant entered a general objection, without specifying any ground therefor, and the court overruled the objection. Various sums ranging from $1.25 to $2 per gallon were given as the value of the whisky. It was also in evidence that the plaintiff left Denver about the 24th of December, 1872, and was absent at the time the defendant removed the whisky from the house at which it had been placed, to the commission house of Mr. Mahar, which was in March, 1873.

It did not appear that the defendant had any knowledge of the instructions given by plaintiff to Minch, or of the manner in which he had been left in charge of the goods. Several persons called by defendant, testified that Minch sold by quantities, large and small, during the months of January, February and March, 1873, and that he appeared to be keeping the house open for business during those months.

Upon motion of the plaintiff, the court directed the jury to disregard all the testimony so given on the part of the defendant. The defendant presented to the court a number of prayers for instructions, which were in substance: That if they believed, from the evidence, that the goods were left in a way, and at a place exhibiting an apparent purpose of sale, the plaintiff would be bound by a sale made by the person in charge, in the ordinary course of trade, to a *bona fide* purchaser, without notice of the relation existing between the principal and the agent.

The defendant also asked the court to charge as follows: "If the jury believe, from the evidence, that the plaintiff departed, leaving the property in question, together with other goods, all in the same store, in the possession of said Joseph Minch, with instructions to sell a sufficient quantity thereof to pay or defray expenses, but leaving the amount of such expenses undetermined, the defendant was not bound to know or make inquiry as to such expenses, or whether the said Joseph Minch was selling more of said goods than was sufficient to defray the same, but under such instructions the said Joseph Minch had a discretionary power, so far as third persons are concerned, to sell, in the usual course of trade, any and all of said stock of goods, and the plaintiff would be bound by such sale or sales."

All the prayers of the defendant were refused by the court, and the defendant excepted.

The jury found for the plaintiff in the sum of $2,710.40 damages, which appeared to be within the value of the goods, at the time of the alleged conversion, as given by the witnesses. The plaintiff had judgment and the defendant appealed.

Mr. H. R. HUNT and Mr. B. M. HUGHES, for appellant.

Mr. J. Q. CHARLES and Mr. A. C. PHELPS, for appellee.

STONE, J. The first, second, third and fourth assignments of error relate to the admission of certain evidence offered by the plaintiff, under objection by the defendant, and the fifth to the rejection of certain evidence offered by the defendant.

We are of the opinion that the evidence received by the court was properly admitted, and that rejected, properly rejected.

The seventh and eighth assignments relate to the withdrawing from the consideration of the jury the evidence introduced on the part of the defendant, and the instructions of the court directing the jury to disregard it. If the evidence withdrawn tended to establish any valid defense to the action, it was error to withdraw it from the consideration of the jury ; but if such was not its tendency, then there is no error in withdrawing it, and instructing the jury to disregard it. We are unable to see any tendency in the evidence withdrawn, to establish any defense to the action ; admit it, and it does not show any authority in Minch to sell the whisky, and it was therefore properly withdrawn, and the jury properly instructed to disregard it.

The ninth assignment relates to the refusal of the court to give the instructions requested.

The instructions asked presuppose that there is some evidence before the jury which they have a right to consider. If there is no evidence for the jury to consider, instructions ought always to be withheld. Correct instructions, if applicable to the case, the court, as a general rule, is required to give, unless the same are in substance and effect embodied in those previously given by the court to the jury ; but the court is never required by law to give an instruction to the jury, which is not applicable to the case, even though it be correct as an abstract principle or rule of law, and no prayer for instructions can

be regarded as applicable to the case when it is wholly unsupported by the evidence introduced to the jury. Where there is no legal evidence of any kind to support the theory embodied in a prayer for instructions, whether presented by the plaintiff or the defendant, the instruction should always be refused, and such a ruling can never become a good cause for reversing the judgment.

It is clearly error in a court to charge a jury upon a sup posed or conjectural state of facts of which no evidence has been offered, as the instruction presupposes that there is some evidence before the jury which they think sufficient to establish the fact hypothetically assumed in that way by the court, and if there is no evidence which they have a right to consider, then the charge does not aid them in coming to a correct conclusion, but its tendency is to embarrass and mislead them, as it may induce them to indulge in conjectures, instead of weighing the testimony. When a prayer for instruction is presented to the court, and there is no evidence upon the subject in the case for the consideration of the jury, it ought always to be withheld. The true rule, if there be no evidence to support the theory of fact assumed in the prayer, is to reject it, as it is error to leave a question to a jury in respect to which there is no evidence. *Insurance Company* v. *Baring*, 20 Wall. 161.

We find no error in the record, and that the motion for a new trial was properly refused.

<div align="right">

*Judgment affirmed.*