THE FIRST NATIONAL BANK OF FORT SCOTT v. C. F. DRAKE.

NATIONAL BANK — *Powers Vested in Directors as a Board.* The only powers conferred by statute upon the directors of a national bank are vested in them as a board, and when acting as a unit, and therefore the assent of a majority of the individual members of the board acting separately and singly is not the assent of the bank, and is not binding upon it.

*Error from Bourbon District Court.*

ACTION brought April 16, 1881, by *The First National Bank of Fort Scott, Kansas,* against *C. F. Drake,* to recover for alleged violations by Drake of his trust as a cashier and president of the bank. The petition alleged that from May 5, 1877, until September 28, 1880, Drake was the largest stockholder of the bank and a director thereof, and that upon May 5, 1877, he was elected as its cashier, and held that office continuously and acted as such up to July 7, 1880, when he was elected president of the bank, and held the office of president continuously and acted as such up to September 28, 1880, and that during all this time he was the general manager and custodian of the property, business, money, rights and credits of the bank. The charges alleged against him in the petition in brief are, first, that he paid to himself $2,203.97, as interest on demand certificates of deposit issued to himself while cashier, in violation of the rules and by-laws of the bank; second, that he paid to himself $3,165.50 salary, contrary to

law, and contrary to his agreement to serve without salary; third, that he sold to himself certain municipal bonds of Bourbon county, Kansas, which were the property of the bank, at considerably less than their actual value. All of these acts are alleged to have been done while Drake was acting as the managing officer of the bank, without the authority or knowledge of the board of directors of the bank. The answer alleged, among other things, that these acts were done with the knowledge, consent and approval of the officers and directors of the bank, and that a record of them was made in the usual course of business in the proper books of the bank. It was also alleged that the demand certificates of deposit for interest were signed by the proper officers of the bank, that they were made payable to Mr. Drake, and that none of them were signed by him as cashier or otherwise. It is also alleged that all of the payments were voluntarily made to him by the bank with full knowledge of all the facts and circumstances attending the same, and that the officers and directors had actual knowledge thereof. The case was first tried at the December Term, 1881, of the district court, and judgment was then entered for the defendant upon a demurrer to the plaintiff's evidence. It was then brought to this court for review, and the judgment of the district court was reversed, and the case remanded for a new trial. (*National Bank v. Drake*, 29 Kas. 311.) It was again tried at the May Term, 1884, of the district court with a jury, when certain particular questions of fact were submitted, which, with the answers thereto, are as follows:

"1. Was there an understanding between the other directors of the bank and the defendant, at and before he was made cashier of the bank, that if he was made cashier he would serve without salary? A. Yes.

"2. If you find that there was an understanding that defendant would serve without salary, was the understanding between the board and the defendant ever changed after he became cashier? A. No.

"3. Did the defendant, at any time after he had taken any sum for salary, inform the board of directors of the bank that he had done so? A. No.

"4. Was it a rule of the bank before and during all of the time that defendant was its cashier, that no interest should be paid on demand certificates of deposit? A. Yes.

"5. Did the defendant have any agreement with the board of directors of the bank as to the transfer to him of the Bourbon county funding bonds, at or before the time he took them? A. No.

"6. While the defendant was an officer of the bank, did he ever inform the board that he had taken interest on demand certificates of deposit? A. No.

"7. Did the directors at any meeting of the board authorize the taking by defendant of the said sums of interest? A. No.

"8. Did the directors at any meeting of the board ratify the taking by defendant of the said sums of interest? A. No.

"9. Did the directors at any meeting of the board authorize the taking by the defendant of the Bourbon county bonds? A. No.

"10. Did the directors at any meeting of the board ratify the taking by the defendant of the Bourbon county bonds? A. No.

"11. What was the value of the Bourbon county funding bonds at the time the defendant took them? A. 95 cents, with accrued interest.

"12. Did the board of directors ratify the first taking of salary by the defendant at any time? A. No.

"13. Did the board of directors at any time ratify the second taking of salary by the defendant? A. No.

"14. Did the board of directors at any time ratify the taking of the several amounts of interest, for which this suit is brought? A. Yes.

"15. If 'Yes,' then state how the board did in fact ratify it. A. By individual consent of a majority of the board.

"16. Did the board of directors at any time ratify the taking of the Bourbon county funding bonds by the defendant? A. No."

A verdict was returned by the jury in favor of the plaintiff for the sums alleged to have been wrongfully received by Drake for salary as cashier, and for the difference between the amount actually paid by him upon the municipal bonds which he purchased from the bank and their value at the time he received them, amounting in all to $4,408.75. The jury refused to find for the plaintiff as to the sum claimed for inter-

est on demand certificates. The plaintiff then moved the court to render judgment for the additional sum received by Drake as interest on deposits, basing its motion on the answers returned by the jury finding that the board of directors of the bank did not, as a board, authorize or ratify the taking of the interest by the defendant, and that the only ratification was by individual consent of a majority of the directors. This motion was disallowed, and judgment rendered in accordance with the general verdict returned by the jury. The plaintiff brings the case here.

*Ware & Ware*, for plaintiff in error:

The plaintiff in error claims, first, that the board of directors had no power to ratify, and that the alleged ratification constitutes no defense; and, second, that there never was any ratification, even if ratification would constitute a defense.

I. In order to lay a foundation for the examination of the first claim, we must establish some preliminary propositions:

1. The cashier of a national bank is its chief executive officer. His duties are defined by law, and are strictly executive. He does not regulate or control the business; he transacts it. (Morse on Banks, 1st ed.; p. 137; Ball on National Banks, p. 265; *Bank v. Bank*, 10 Wall. 604.)

The cashier, being an executive officer who transacts business for a bank, must, perforce, be an agent. But whose agent is he?

2. The cashier of a bank is the agent of the stockholders, and is not the agent of the board of directors. The board has its well-defined legal and statutory duties to perform, the same as the cashier has. The board therefore is also an agent of the stockholders. Consequently the cashier and the board are coägents of a common principal. The cashier is no more the agent of the board than the board is the agent of the cashier. The board can elect a cashier, but his duties are defined by law. He obeys the law and not the board. (Thompson on Powers of Bank Cashiers, §§ 1, 5; *Bank v. Barrington*, 2 Pa.

27; *Bank v. Bank*, 1 Par. Sel. Cas. 180, 240; *Bissell v. Bank*, 69 Pa. St. 415.)

3. If an agent wrongs his principal, the wrong cannot be forgiven or pardoned by another agent. The principal alone must do the pardoning. If a cashier converts to his own use money of a bank, the directors cannot forgive the cashier. They have no such power. They are agents merely, and their duties are defined by law. If a board of directors had power to forgive a cashier for robbing a bank, then a majority of the board could collude together with the cashier and continue to rob, divide and forgive.

"A usage of the board of directors to permit the cashier to misapply the funds of the bank cannot exonerate his sureties." (*Minor v. Bank*, 1 Pet. 46. See also *Burke v. Smith*, 16 Wall. 395; *Upton v. Tribilcock*, 91 U. S. 48; *Bedford Co. v. Bowser*, 48 Pa. St. 37; *Austin v. Daniels*, 4 Denio, 299; *Salem Bank Case*, 17 Mass. 1.)

4. The doctrine of ratification has no application to a transaction or wrong wholly between principal and agent. Ratification is the acceptance by a principal of the acts of one who, without original authority, acted with *third parties* in the name of such principal. It is a branch of the doctrine of principal and agent. The acceptance must be by the principal; one agent cannot ratify the acts of another agent unless the acts were, in the first place, lawful; and secondly, were with third parties in the name of the principal; and thirdly, the ratifying agent must have had previous authority, before the act, to command the performance of the act ratified, or be given special power afterward. (Domat's Civil Law, Strahan's ed., § 2364.)

In all cases of ratification there must be an "outsider"— a third person—either actual or in contemplation of law; and the ratification must operate on the outsider, the third person. (Wharton on Agency, § 74.) Acquiescence is a branch of the doctrine of ratification. It is a ratification by presumption. (*Kent v. Mining Co.*, 78 N. Y. 187.)

5. The ratification of a tort must be by a principal, concerning some act done to *a third party* by the command of, or for the use and benefit of, the principal. There is no such a thing as the ratification of a tort committed by an agent upon the principal. The idea of ratification of a tort, implies by its very terms the existence of an agent and a third person. In strict language there is no such thing as a ratification of a tort. To ratify means to make valid. That which is void cannot be made valid. ( 7 Hen. IV, fo. 35 ; 4 Coke's Inst. 317.) The ratification of a tort is simply the assumption of a liability created by law.

The directors of a bank are agents, and have no power to make gifts. They cannot give away the money of the bank, or give away its right to money. It may be asked : If the board of directors cannot ratify the act of defendant in error, who can? We confess our ignorance; we do not know. The directors cannot do it; it is their duty to collect the money. A majority of the stock at a stockholders' meeting cannot do it. The majority of stockholders might pass a resolution directing the board *not to sue*, and might even elect a board on that issue. If the majority did this, then if there was one dissenting stockholder he might sue in behalf of the bank, on showing that the bank would not. The desire not to sue must be unanimous, and must continue for a length of time that would bar the claim by limitation. Then, and not till then, would the trustee be safe from suit; and this would be forgiveness, and not ratification — forgiveness by the stockholders and not by the corporation. (*Hazard v. Durant*, 11 R. I. 196; 7 Hare, 129.)

6. The by-laws of a national bank, that are passed within the scope of its authority, are as binding upon its officers as statute law. (*Cummings v. Webster*, 43 Me. 192; *Anacosta Tribe v. Murback*, 13 Md. 91; *German Evan. Cong. v. Pressler*, 17 La. An. 127; *McDermott v. Board of Police*, 5 Abb. Pr. 422; *Sassenscheldt v. Ben. &c. Union*, 1 City Ct. Rep. N. Y. 8.)

7. Section 5209 of the U. S. banking law is :

"SEC. 5209. Every . . cashier . . of any associa-

tion, who . . willfully misapplies any of the moneys, funds or credits of the association, . . shall be deemed guilty of a misdemeanor, and shall be imprisoned," etc. (See also *In re Van Campen,* 2 Benedict, 419; *United States v. Tainter,* 11 Blatchf. 374.)

The facts of the case being undisputed, as is shown by the special findings, then, if the various propositions of law are as we have stated them, it follows that the doctrine of ratification has no reference or application to this case; because, first, the liability of the defendant is for a wrong done by him to his principal, the stockholders; and, second, there being no third person, the doctrine of ratification does not apply.

II. That the members of a board must act *as a board,* and cannot act individually, we deem to be so well settled that the citation of authorities is unnecessary. Without waiving that point, we argue the question on the fundamental proposition that the board could not ratify at all.

*A. A. Harris,* for defendant in error:

Counsel for the plaintiff in error contend, first, that the board of directors had no power to ratify, and that the alleged ratification constitutes no defense; and second, that there never was any ratification, even if ratification would constitute a defense. It is more convenient, for the purposes of this argument, to discuss the second proposition of counsel for plaintiff in error before proceeding with the other.

Question 14 was, "Did the board of directors at any time ratify the taking of the several amounts of interest for which this suit is brought?" Ans., "Yes." Question 15 was, "If yes, then state how the board did in fact ratify it?" Ans., "By individual consent of a majority of the board." The jury were asked by question 14 to say whether there was ratification; and am I not right in declaring that where the jury were required to answer whether or not the board of directors had ratified the action of defendant in error in taking the interest, and when they had answered in the affirmative, then such answer was conclusive upon the plaintiff in this case?

The question submitted to them was, "Was there ratification?" which is but another form of asking, Was there approval? Was there sanction? Was there confirmation? · The jury found that there was approval, sanction, confirmation. The case was tried, as the pleadings and the special questions submitted to the jury show, upon the theory that the board of directors might ratify. Is it not true, then, that when the jury have found that there was ratification, that further inquiry is precluded?

When asked to state how the board did in fact ratify Mr. Drake's action, the jury say, "By individual consent of a majority of the board." This implies not only ratification in law, but, taking the answer in its ordinary signification, consent to the act itself upon the part of the board. Consent implies knowledge, and therefore the full meaning of this last answer would be, that the board of directors, with full knowledge of the fact, consented to it. The jury, after hearing the evidence adduced on the trial and the instructions of the court, might very well come to the conclusion that there was ratification, and they might so answer. And yet it might be impossible for them to express in words how the ratification was obtained, or what constituted it. Indeed, the counsel on the other side might vainly endeavor for an indefinite time to define ratification in precise terms, but the fact and truth remain that the jury have answered that there was ratification. That finding has not been disturbed — it remains as a settled proposition; and I most respectfully submit that it is not within the province of this court to say that there was not ratification.

As to the first proposition stated by counsel for plaintiff in error, viz., that the board of directors had no power to ratify, it should be remembered that the allegations of the petition upon this point are, that the taking of this interest was contrary to the orders of the board of directors, and that the case was tried in the court below wholly upon the theory that the board of directors might ratify the taking of the interest, if, in fact, it was not authorized in the first instance. The special questions submitted by the plaintiff are all predicated upon

the theory that the board of directors might ratify; and I submit that when the case was tried in the court below upon that theory, and the motion for judgment for the interest was predicated upon that idea, it would be an outrage, both upon the court below and the jury, to permit the bank now to claim that the board had no power to ratify. The theory that the board could not ratify was not advanced when the case was on trial. When, at the instance of plaintiff, the jury had answered affirmatively to the question as to whether there was ratification, it is not in good faith for the plaintiff to say now that the board had no power to ratify.

Counsel for the bank say that not even a majority of the stockholders could ratify; that, perhaps in strictness, not all of them could. But they did not put their case upon that ground in the court below; for aught this court knows, evidence was adduced of the fullest and most complete ratification upon the part of the stockholders of this corporation.

The defendant in error was neither the agent of the directors, nor of the stockholders. The question of principal and agent does not apply, and consequently all the authorities quoted upon that point are irrelevant. In discussing this question when the case was in this court before, Mr. Justice BREWER said: "We think, therefore, that it will not do to say that it [ratification] is strictly a branch of the doctrine of principal and agent. It is the confirmation of a voidable act." (29 Kas. 324.) The declaration of this court, therefore, disposes of the major part of the argument of counsel for the bank.

The startling declaration is made by counsel that in all cases of ratification there must be an outsider, i. e., a third person, either actual or in contemplation of law, but no authorities are quoted to sustain it, for the reason, probably, that none can be found.

Counsel for the bank say that the board had no power to atify. Stated in another form, I suppose that proposition would be that even if the act was without the knowledge or consent of the board of directors in the first instance, they could not afterward ratify and confirm it so as to make it

binding upon the bank.   Mr. Justice Story, in *Fleckner v. Bank of U. S.*, 8 Wheat. 339, said:

"The whole business of the bank is confided entirely to the directors, and of course with them it would rest to fix the duties of the cashier or other officers."

This court said, in the case of *Bank v. Drake*, 29 Kas. 325, that—

"The directors constitute the governing body of the bank, the bank itself being an incorporeal entity without power to see or know.   The directory constitutes the visible representative, the thinking, the knowing head, of the bank.   Its knowledge and purpose is the knowledge and purpose of the bank."

By the express provisions of the federal statute governing national banks, (Rev. Stat. of U. S. § 5136,) they are authorized to receive deposits.   Their business is to be managed by a board of directors elected by the stockholders.   In the case of the *Salem Bank v. Gloucester Bank*, 17 Mass. 1, it is said:

"In certain things the directors of a bank have all the authority of the corporation vested in them by a vote, and in respect to such things their engagements, express or implied, will bind the corporation."

Now, then, this bank was authorized to receive deposits. Being so authorized, it certainly had authority to pay interest on the same if its board of directors saw fit, even though the deposits had been made upon the condition that no interest was to be paid.   While there was an allegation in the petition that there were by-laws of the bank, to the effect that no interest should be paid on demand certificates of deposit, there is no finding to that effect by the jury.   These certificates, it has been shown, bore interest on their face.   They were signed by officers of the bank other than Mr. Drake.   Why, then, was not the bank bound by the obligation which it entered into to pay interest on the deposits?   Grant, for the sake of the argument, that there was a rule of the bank that no interest should be paid on such deposits as those in question, still that would not make it criminal in one to receive interest on the same, and having received it with the consent of the directors, as is shown

by the findings of the jury, I cannot see why the bank can now question the validity of the transaction.

"It must also be remembered that the tendency of modern judicial interpretation and legislation has been to waive needless formalities, and that consequently at the present many agreements are held binding upon corporate bodies, even without ratification, which a few years since would, from technical reasons, not have been so." (*Durham v. Coal Co.,* 22 Kas. 244.)

"Ratification may he inferred from corporate acts involving or implying confirmation." (*Howe v. Keeler,* 27 Conn. 538; *Ridgeway v. Farmers' Bank,* 19 Serg. & R. 256; Field on Corporations, § 207.)

In *Bank v. Drake,* 29 Kas. 331, this court said:

"We think that the question is rather to be treated as a question of fact, and to be determined by a jury, as to whether the bank acquiesced in and ratified the action of the cashier, than to be disposed of as a question of law and dependent upon a purely legal presumption."

Upon the whole case, as this court said in *Bank v. Drake,* supra:

"It may be fairly submitted to a jury whether, independent of any proof of actual knowledge, the action of the cashier has not been so open, and long continued, and under such circumstances, that it may be inferred that the directors assented to his acts."

The fact is, that for a long time this bank had the use of Mr. Drake's money; and it is not in good faith for it to complain after it has had such use and paid him only a moiety of what his money was actually worth.

The opinion of the court was delivered by

JOHNSTON, J.: This case can be easily disposed of. The only question presented arises upon the refusal of the court to enter judgment in favor of the plaintiff upon the findings of the jury for the amount of money taken from the bank by the defendant as interest on demand certificates of deposit that had been issued to himself while he was serving as president

and cashier of the bank. The defendant admits that he took the money at the times and in the amounts charged by the plaintiff, and the jury have found that during all the time the defendant was acting as an officer of the bank, there existed a rule or by-law of the bank which prohibited the payment of interest on demand certificates of deposit, and that at no time while the defendant was an officer of the bank did he ever inform the board of directors that he had taken interest on these certificates; and it was also found that the directors did not at any meeting of the board authorize or ratify the action of the defendant in taking interest. The defendant contended and contends that although his act in taking the money was contrary to the by-laws of the bank, yet that there had been a ratification of the unauthorized act by the board of directors which is binding upon the bank. After stating that the directors had never at any meeting of the board ratified the taking of interest by the defendant, the question was asked the jury: "Did the board of directors at any time ratify the taking of the several amounts of interest?" To this question an affirmative answer was given; but in the next finding the jury explained particularly how the supposed ratification had been made, finding that it was "by individual consent of a majority of the board." The last finding, stating particularly what was done, controls and. prevails over the former one stating the general conclusion that there had been a ratification. These findings clearly show that the only sanction which the unauthorized acts of the defendant have received from the plaintiff, was given by the individual members of the board acting singly and separately, and not as a board. Action thus taken is not binding on the bank, and does not constitute a defense to the plaintiff's claim. The statute declaring the method in which the bank may exercise corporate power provides that the appointment and dismissal of its officers, the enactment of by-laws regulating the manner in which its officers and agents shall conduct its business, and the general supervision and management of its affairs, shall reside in and be exercised by a *board* of directors. (Rev. Stat. U. S.

National bank —
powers vested
in directors as
a board.
§ 5136.) This statute provides for the election of a president of the board, and otherwise assumes that the directors shall act unitedly as an organized body. The election of an individual as a director does not constitute him an agent of the corporation with authority to act separately and independently of his fellow-members. It is the board duly convened and acting as a unit that is made the representative of the company. The assent or determination of the members of the board acting separately and individually is not the assent of the corporation. The law proceeds upon the theory that the directors shall meet and counsel with each other, and that any determination affecting the corporation shall only be arrived at and expressed after a consultation at a meeting of the board attended by at least a majority of its members. As the only powers conferred upon directors are those which reside in them as a board and when acting collectively as such, the individual consent of a majority of the members acting separately is not enough to ratify the unauthorized appropriation of the money of the bank by the defendant. (Angell & Ames on Corporations, § 504, *et seq.*; Morawetz on Private Corporations, § 247; Field on Corporations, § 242; *Baldwin v. Canfield*, 26 Minn. 43; *First National Bank v. Christopher*, 11 Vroom, 435; *Junction Rld. Co. v. Reeve*, 15 Ind. 236; *In re Marseilles Rly. Co.*, Law Rep., 7 Ch. App. 161; *D'Arcy v. Tamor &c. Rly. Co.*, Law Rep., 2 Exc. 158; *Schunn v. Seymour*, 24 N. J. Eq. 143; *Cammeyer v. United German Churches*, 2 Sandf. Ch. 186; *Edgerly v. Emerson*, 3 Foster, 555; *Stoystown & Greensburg Turnpike Road Co. v. Craver*, 45 Pa. St. 386; *Keeler v. Frost*, 22 Barb. 400. See also the following cases, which are somewhat analogous and applicable: *Aikman v. School District*, 27 Kas. 129; *Mincer v. School District*, 27 id. 253; *Comm'rs of Anderson Co., v. P. & F. R. Rly. Co.*, 20 id. 534; *P. & F. R. Rly. Co. v. Comm'rs of Anderson Co.*, 16 id. 302; *Herrington v. District Township of Liston*, 47 Iowa, 11; *McCortle v. Bates*, 29 Ohio St. 419.)

The conclusion which we have reached renders it unneces-

sary to consider the other questions so much and so well argued by counsel with regard to the relations existing between the cashier and the board or directors, and which both of them sustain toward the bank, and whether the doctrine of ratification can have application to a transaction wholly between the board of directors and the cashier.

The ruling of the district court disallowing the plaintiff's motion for judgment *non obstante veredicto* will be reversed, and the cause remanded with directions to enter judgment on the special findings of the jury for the additional amount appropriated by the defendant without authority of the bank as interest on demand certificates of deposit, in accordance with the plaintiff's application.

All the Justices concurring.