Thomson, J.,
delivered the opinion of the court.
Bertha Klein, a child six years old, was killed by falling out of an elevator in the Central Block in the city of Pueblo, operated by The T. & PI. Pueblo Building Company, and this action was brought by Henry Klein and Bella Klein, the parents of the child, to recover damages on account of. her death. Two caus.es of action are embraced in the complaint. The first is that at 7:30 o’clock p. M., of the day of the accident, the deceased child and her brother, Louis Klein,-nine years *349 of age, entered the elevator for the purpose of ascending to the office of one Roe, on the third floor of the building, to call their father, who was then in that office, to his home; that after the children had entered the elevator, and before Bertha had reached a safe position therein, its employee, in charge of the elevator, carelessly and negligently caused the elevator to suddenly ascend at a very high rate of speed, throwing Bertha through the opening of the elevator against the inclosure of the shaft, where she was caught between the elevator and the inclosure, and precipitated down the shaft into the basement of the building, striking upon the concrete floor, and receiving injuries from which she almost immediately died. The second cause of action sets forth that the elevator was improperly constructed, in that the space between it and the inclosure was of such width as to admit the passage of the body of a child, and that the opening into the elevator was not provided with a door, gate, bar or any guard, by reason of which things the elevator was a dangerous means of conveyance for small children, as was well known to the defendant. It further alleges the entrance of Louis and Bertha Klein into the elevator, the sudden and rapid ascent which the employee in charge caused the elevator to make, without warning to the children of the danger of the exposed opening in the elevator, and the precipitation of Bertha Klein, by the sudden and violent motion imparted to the elevator, through the opening and down the shaft into the basement, causing her death.
The answer consisted of a general denial and averment that the elevator was properly constructed, and that the accident was caused by the act of Bertha Klein, and not by any fault or negligence of the defendant. There was verdict and judgment in plaintiffs’ favor for $2,000. The defendant comes here by appeal.
The testimony of Louis Klein, the brother of Bertha, and who entered the elevator with her, tends strongly to prove that the accident was caused by the carelessness of the elevator boy, in the manner in which he started the elevator carriage. *350 After Louis had testified, the plaintiffs introduced a witness named Saunders, who stated that he was acquainted with the boy who had charge of the elevator at the time of the accident, and who was the night operator of the elevator, and that he, the witness, had several times ridden up in the elevator with him. Plaintiffs’ counsel then asked the witness the following question: “You can state from your observation in riding up in the elevator at the Central Block, how the elevator was generally started by that young man ? ” This question was duly objected to by counsel for the defendant. The court then said: “ The court admits the evidence solely for the purpose of determining what can be done with the elevator, and how it can be operated, and the jury are specifically told that the proof of negligence, if it shall be shown that the elevator could be operated negligently and dangerously upon any other occasion, will not be evidence that it was on this occasion so operated.” The witness being permitted to answer the question, stated that in his manner of starting up the elevator he noticed a very marked contrast between this boy aud the day boy; that almost as soon as he, the witness, stepped into the elevator, this boy seemed to be very careless, or for some reason, started it at full speed, making it sometimes difficult for the witness to keep his feet. The boy always dropped the elevator suddenly, in the same way. On one occasion, as witness stepped on the elevator, just as he put his foot on it, the boy dropped it suddenly, without warning, and threw witness forward, throwing his face against the further side, and by the time he regained his place the elevator was at the bottom. Witness was angry, and remonstrated with the boy, telling him to be more careful, and not to do that with witness again. The boy started the elevator in that way with witness on several occasions. Plaintiffs’ counsel then asked the witness this question, to which objection was made on behalf of defendant for incompetency and irrelevancy: “Will you state what effect the starting of the elevator had upon you when it started in that way ? ” The objection being overruled, the witness answered *351 that by starting it so suddenly it would make him stagger, unless he was particularly thinking of it at the time and steadied himself against the elevator; that sometimes the boy started it very gently, but as it seemed to witness, in the majority of cases he started it with a sudden jerk, and seemed to throw on the full power at once. At the close of the case defendant’s counsel moved the court to strike out all the evidence of the witness Saunders which related to the actions of the elevator boy. The court, ruling upon the motion, said: “ The jury are instructed that they will not consider the evidence of the witness Saunders as substantive evidence tending to prove the manner in which the elevator was operated at the time of the accident; the only purpose for which it was introduced and permitted to be considered is to determine whether the elevator can be so suddenly started as to endanger a passenger riding thereon.” Upon these several rulings error is assigned.
The testimony of Saunders was clearly inadmissible. The only negligence charged was that of the elevator boy on the occasion of the accident. No other negligence was in issue. If he was negligent then, it would have been no defense that he had always before been careful. If he was not negligent then, it was entirely immaterial how habitually or recklessly negligent he might have been prior to that time. The effect of the testimony upon the jury must have been unfavorable to the defendant. If they believed that its servant was in the habit of starting and moving the elevator without regard to the safety of passengers, it would require less effort than otherwise to convince them of his negligence upon the occasion in question. The announced purpose of its admission, and the instruction to the jury as to how they should consider it, did not cure the mischief. They were instructed that they might consider it, but only for a certain purpose, which was to determine whether the elevator could be so suddenly started as to endanger passengers. Of course the fact that it was so started would be conclusive that it could be so started; but there was no evidence that it was started *352 in that way which could be separated from the carelessness of the elevator boy in starting it. Expunge from the testimony his acts of negligence in starting the elevator, and there is no evidence that it ever did start, or ever could start, with a jerk; and, in fact, very little that it ever started at all. The witness contrasted this boy’s method of starting it with that of the day boy, and also remarked that this boy sometimes started it gently, but in a majority of instances otherwise, thus emphasizing the fact that the quick motion of the elevator was not due to anything inherent in itself, but solely to the manner of its operation ; and the jury could not possibly consider the question whether the elevator could be so suddenly started a.s to endanger passengers, without at the same time considering how it could be so started, and why, in fact, it did so start. The defendant introduced evidence contradictory of Saunders’ testimony, and tending to show the general carefulness of the boy in handling the elevator; and counsel say that, by introducing such evidence, the defendant waived any error there might have been in the admission of Saunders’ testimony, and made it competent. We do not understand how incompetent evidence can be made competent by further incompetent evidence. The question of the boy’s carelessness on other occasions was not in the case. Saunders’ testimony having been admitted against the objection of the defendant, it waived nothing by attempting to break its force, although, it may be remarked, the evidence given for that purpose was equally incompetent with the other. Martin v. N. Y., N. H. & H. R. R. Co., 103 N. Y. 626. The defendant also introduced evidence that the machine was so geared that it was impossible forit to be started with a jerk; but this evidence was not specially in answer to the testimony of Saunders. It was in direct support of the defense. It went in contradiction of the testimony of Louis Klein, and would have been admissible if Saunders had not testified at all. The competency of Saunders’ testimony was not affected in one way or another by it. The evidence of the elevator boy’s conduct at other times *353 should not have been received; but, having been admitted, the only way of obviating its effect was to strike it out, and instruct the jury to disregard it entirely. The instruction, of the court wholly failed in this.
But if it was the design of the court to withdraw the objectionable evidence from the jury, its good intention was completely nullified bjrsome of the general instructions given when the case was submitted, and which are assigned for error. Instruction number four told the jury that if they believed from the evidence that the manner in which, or the rate of speed at which, the defendant’s servant, who was in, charge of the elevator at the time of the accident, was accustomed to set it in motion in ascending, was such that a reasonable person ought to apprehend that a position therein would be a position of danger, it was the duty of its servants, etc. Instruction number five also submitted to the jury the question of its manner of operating the elevator. Both of these instructions, and more particularly the fourth, compelled the consideration, on the part of the juiy, of all that Saunders had stated concerning the careless and negligent manner in which this boy was accustomed to start the elevator when he, Saunders, was on board ; and entirely obliterated the distinction which, it is presumed, the court intended to draw in passing upon the admissibility of the evidence and instructing as to the purpose for which it was admitted. All of the court’s rulings upon this evidence, and the instructions involving it, were erroneous.
Over the defendant’s objection, the court permitted the witness, West, to testify that he was standing in front of the block when he heard the child’s scream, that he immediately went np the stairs to the third floor of the block, where he saw the elevator boy, and asked him what was the matter, to which he replied that he did not know, that he supposed that somebody was hurt. The witness also said that he did not think the time between the accident and the conversation was over a minute. The controversy between counsel is as to whether this convei'sation was admissible as part of the *354 res gestae. The question involved is not always free from difficulty in cases of this kind. There is an apparent disagreement among the adjudications as to when declarations, of which the principal transaction is the subject, may be considered as part of the res gestae, and when not. The cases agree in their statement of the rule governing that class of evidence, and the seeming conflict'lias arisen out of the application of a general principle to special conditions, so that we find different conclusions deduced from similar facts. In some of the eases, declarations made a considerable time after the event, and where the connection between the two seems to be somewhat shadowy and unsubstantial, were held competent as part of the res gestae} while in others they have been held incompetent even when made directly upon the heels of the fact, and separated from it by an almost imperceptible interval of time.
It is no part of our present purpose to attempt to harmonize the authorities, or to criticise any of them. The question before us can be decided upon principles which they all recognize, and without coming into collision with any adjudication of either of the classes. The general doctrine applicable to the question may be stated thus : The declaration offered in evidence must be either contemporaneous with the principal fact, or its natural and spontaneous outgrowth. It must be the instinctive, unmeditated utterance of the party while the impression produced by the event has full possession of his mind. The connection between the statement and the fact must be such that the one is the evident interpreter of the other. Their relation to each other must be that of immediate cause and effect. When the two are thus connected, it does not matter that there is an appreciable lapse of time between them.»,, Notwithstanding such lapse, the one is a continuation of the other, and both are parts of one transaction. But, if there is a severance of the connection, if the transaction, so far as the person speaking is concerned, is at an end before the declaration is made, the -two are distinct, independent of each other, and it is imma *355 terial how minute the interval which separates them. The utterance then proceeds from volition, and the speaker is not the mouthpiece of the event. See 1 Wharton on Ev., sec. 259; 1 Greenleaf on Ev., secs. 108, 110.
The decisions in Commonwealth v. M'Pike, 3 Cush. 181, and Insurance Company v. Mosley, 8 Wall. 397, make a very liberal application of the rule, and, in consequence, have been subjected to considerable adverse criticism. The declarations which were held admissible in those cases were declarations of the injured persons made some time after the injuries were received, but while suffering from their immediate effects; so that it was, without doubt, considered that the mental and physical condition of the parties, resulting directly from the injuries, furnished the necessary connection between the transactions and the statements; and in Augusta Factory v. Barnes, 72 Ga. 217, in which the facts were similar, the admission of the declarations of the injured party, made a half hour after the accident, and at a different place, was placed upon that precise ground. These decisions go to a length which in other cases is pronounced unwarranted; still, although the connection between the events and the utterances seems vague, the necessity of a connection is recognized, and it is not incumbent upon us to take issue with them for any purpose connected with this decision.
In this case no connection whatever appears between the fall of the child from the elevator and the words spoken by the elevator boy. If, when the child fell out, he had immediately lowered the elevator to the basement, against the floor of which she struck, any exclamation he might have made upon first coming in sight of her body, and realizing the fatal result of the accident, would perhaps be considered as part of the transaction, and therefore competent. But he continued his ascent, and -was found by West upon the third floor of the building, and there the conversation in question was had. The catastrophe had taken place, he had abandoned the child to her fate, he was giving no attention to the occurrence, and, as to him, the transaction was as completely *356 at an end as it was the next day or the next month. Moreover, it is evident from the language itself, which the boy used, either that the accident had made no impression upon him at all, or that he had concocted his answer under some vague idea that by affecting ignorance he might evade responsibility. Among the variant and conflicting decisions, voicing the opposing extremes of judicial opinion, we have found no case upon the authority of which this evidence could be held admissible. And it cannot be said that the evidence was harmless. The answer made by the boy to West’s question would indicate an indifference to the safety of his passengers, or an ignorance of what was happening within the elevator, either of which is incompatible with the care and watchfulness necessary in his position. It would also have a tendency to discredit his own testimony, in which, as a witness -for defendant, he gave a minute and detailed account of the transaction, directly contradictory of that of Louis Klein. It was error to receive the evidence.
It was shown that the elevator had been in operation fifteen months, and the defendant offered, and the court refused it permission, to prove that during that time large numbers of persons had traveled in it by day and by night, and that this was the first accident which had occurred. Where the proper construction or safe condition of machinery is in issue, evidence that it has always satisfactorily answered the purpose for which it was intended is competent as raising a strong presumption that it was properly constructed and could be used with safety. It would also tend to repel any implication of negligence on the part of the owner in using improper machinery, because its continued operation for a long time with uniformly good results would be evidence of its freedom from danger, as convincing as any he could have. But we do not understand the complaint as charging that this elevator was unsafe for general travel. It is only in reference to the conveyance of small children that the charge of unsafety is made. The offer of the defendant, as it was framed, was, we think, to broad; and the evidence proposed *357 would not have the effect of disproving the allegation. If evidence of this kind is proper at all under the peculiar averments of the complaint, it should be restricted to the class of persons for whom the elevator is alleged to be a dangerous means of conveyance. We think this evidence was properly refused, but for the errors which we have noted the judgment must be reversed.

Reversed.