Bissell, J.
Gumaer, as the maker of five several demand promissory notes, dated the 15th and 20th of July, 1893, four for the sum of $2,500 and one for the sum of $2,000, payable to the order of the Needles National Bank, Isaac E. Blake, the Gladiator Mining Company, the Needles Reduction Company, and the Nevada Southern Railway, was sued by the appellant, Murphy, as receiver of the Needles National Bank which had acquired and held the notes prior to the time it went into liquidation and passed under the control of the comptroller of the currency. It was recited on the face of the notes that they were given for value, payable at the Needles National Bank to the several payees with interest at ten per' cent. When sued the defendant by answer admitted the incorporation of the bank, and then proceeded to deny the appointment of the receiver, the giving of the notes for value, the demand for payment, and as a second defense, averred that neither the bank nor anybody else paid any consideration for the notes, and set up somewhat at length, the real basis of his defense which may be stated in legal form as one based on the fact that the paper was accommodation paper, given without consideration, and that the bank never acquired a title as a bona fide holder for value. The defense generally rested on allegations to the point that one Isaac E. Blake was a stockholder in, manager of, and agent for, the Needles National Bank, and that he requested Gumaer to sign the notes for the bank’s accommodation, agreeing with him that the bank would not hold him liable on the notes. There was a further allegation that the bank had full information that the note was not to be collected from Gumaer and took the paper with this understanding and agreement. This is substantially the defense pleaded to each one of the notes. It will be observed there was no allegation otherwise than by the general *475 averment stated, tliat Blake was in fact the manager and agent of the bank or clothed by its officers or board of directors with authority to act for it in the premises. While as a matter of pleading this might under some circumstances be a very serious consideration, it possesses very little significance in the light of the evidence which practically disposes of the question. It must already be very apparent to the professional mind that the issue was a very simple one and that what is material and competent evidence to support the issue is very clearly defined and pointed out by the authorities, and the burden which the law imposes on one who pleads the defense of accommodation paper is well settled. Notwithstanding this fact a large mass of incompetent testimony crept into the record and the issue was submitted to the jury by instructions clearly variant from not only the general current of authorities, but the law as established by the supreme court of the state.
When the cause came to trial, the plaintiff produced the paper establishing his appointment as the receiver of the bank and then offered proof that the notes were discounted by the bank prior to maturity and rested. There were some other facts brought out by the cross-examination of one of the plaintiff’s witnesses which will be subsequently adverted to which bear materially on the question of the character of the bank’s holding. Disregarding this evidence for the present, it is quite clear when the plaintiff showed that the bank acquired the notes before maturity in the usual course of business, and as receiver he was entitled to sue, he had made out a case because it is true that the possession of the notes furnished a presumption of title, and when it transpired that the original notes had been discounted by the bank before maturity, its title and right to sue was fully established. When the defendant assumed the burden which he undertook by his plea that the paper was accommodation paper, he offered considerable testimony. The defendant Gumaer testified to the fact that the original notes were given at the request of I. E. Blake as accommodation paper, and that he received no con *476 sideration at the time he signed the paper either from Blake or from the bank or from any of the payees named. In the course of Gumaer’s examination he was questioned respecting the conversations he had with Blake at the time the notes were given. This matter, however, will be better presented and the facts stated when we discuss the question of the admissibility of this question which is one of the errors assigned. The defendant then offered the president of the bank; Gove, who gave testimony respecting the circumstances under which the original notes passed into the custody of the institution. Originally Gove was cashier, from December, 1892, to the summer of 1898, when he became president, which position he occupied for about a year. The bank failed in December, 1894, though his relations to it ceased in the September preceding. It appeared that he was an executive officer of the bank during all the time he was connected with it, was one of the members of the board of directors, and with the other gentlemen occupying a similar position had control and direction of the bank’s affairs. He established the relations of one Greenlee to the bank, showing that he was cashier, and stating the extent of his authority. During the course of his examination by the defendant there was handed to him a large number of exhibits which are numbered in the abstract and the record from thirteen to seventy-one inclusive. Most of these letters were written by Gove to Blake long after the discount of the Gumaer notes. Some of them were written by Gove to Manly, some to one Mason and others by Greenlee to Blake. The letters are on almost every conceivable subject relating to the affairs of th'e bank and of the corporations with which Blake was intimately concerned either as promoter or operator or both, the private affairs of Blake and the bank, the situation and character of Blake’s indebtedness to the institution and many other matters of similar import and description. The letters were objected to and admitted over the plaintiff’s exception. It would be manifestly impossible within the limits of an opinion to refer to each one of the exhibits, state what it contains, and demon *477 strate the incompetency of the testimony. While we are quite of the opinion that so far as we have been able to discover none of these exhibits were properly admitted in support of the issue because they were written long after the acquisition of title to the paper and so far as we can see in no manner tended to prove that Blake was the bank’s agent for the purpose of procuring this paper from Gumaer and had no reference whatever to this particular transaction, we do not intend to directly decide that no one of them might not be admissible on the subsequent trial, preferring rather to state the rules of evidence by which the trial must be governed, leaving the court on the subsequent hearing to determine, in the light of the law as we shall express it, when each exhibit is presented, whether it or any part of it, is properly admissible in evidence. While Gove was on the stand he also produced at the plaintiff’s request the statements of the bank’s accounts which had been furnished to Mr. Blake by the president, Gove. Just why this statement thus furnished was regarded as admissible we cannot discover. Its admission was undoubtedly harmless and we are not able to see that it could hi any way be prejudicial, yet it was in no wise relevant to the matters hi dispute and did not tend to support the defense pleaded, nor so far as we can see from this record, did it in any wise tend to establish a pivotal fact which under the circumstances of the case it was incumbent on the defendant to prove, to wit, that Blake was the bank’s agent. About this we shall have more to say hereafter. We now come to a statement of what the record shows about the circumstances under which the bank acquired title to this paper. The original notes which were duplicates of those offered in evidence ran for a definite period and came into the possession of the bank prior to their maturity. According to the evidence given by Manly and Gove, the notes after execution were sent to the bank and placed to the credit of the various companies named as payees or to Blake’s individual account. The bank was instructed as to what accounts they should be credited to and the officers of the bank advised the signer *478 that the proper credits were made. The president and the other members of the discount committee passed on them in the ordinary course of business pursued in discounting paper. They were treated like all other notes accepted by the bank. When they had passed the discount committee, the amount of the notes less the interest was placed to the credit of Blake and the companies, which parties were thereupon and thereafter permitted by the bank to draw checks on the credits thus made, and the checks drawn on these accounts containing these credits were paid as drawn. The bank extended a further credit to all the companies and to Blake on account of these notes and to the full face value thereof. Gove testifies that he had no knowledge, and so far as he knew the bank had no knowledge that Blake had made any representations to Gumaer that the notes were executed for the accommodation of the bank. Neither he nor any of the bank’s executive officers nor the discount committee so far as he knew, had knowledge that Gumaer did not receive full value for the paper, and first learned of it when Gumaer called on him in the spring preceding the trial. Gove further testified that as president of the bank he never authorized Blake to procure accommodation notes for the institution. This briefly is the case which the record makes respecting the bank’s title. Part of it is made by the witness Manly who was produced by plaintiff, and the rest by the evidence of Gove who was the bank’s president at the time of the transaction, and there is no other competent evidence in the record which in any wise or manner tends to impeach, shake, limit or modify this testimony. The only matter in the record which in any wise, and this it did not do completely, tended to show Blake’s relations to the bank is found in the letters and exhibits before referred to. As a very significant matter, it must be stated that the defendant offered no proof to the point that either the board of directors, the Needles National Bank, or either of its executive officers, the president or cashier, ever appointed Blake to act as the agent of the bank for the purpose of procuring this paper or for any other purpose. Neither *479 a general nor special agency was established by any evidence whatever. ’ The notes sued on were given on the maturity of the original paper which had been discounted as stated. In place of being time paper like the first notes, they were due on demand and were given to take up the original notes, and thereby obtain further credit and prevent suit. This is all of the history of the notes and of the testimony which need be given, otherwise than as the further matters shall appear in the discussion of the assigned errors.
The rights of holders of commercial paper properly designated as accommodation paper, who acquire title before maturity and for a valuable consideration, are well settled. In the absence of statutory regulations to the contrary where such negotiable paper is received in payment of an antecedent debt, or transferred by indorsement as collateral security for a debt created or a purchase made at the time of the transfer, or the transfer is made to secure a debt not then due, or if due, where by the terms of the agreement the collection of the principal sum is delayed, and under all other similar conditions the holder taking it as stated without notice and for value, acquires thereby an unimpeachable title. No equity and no defense however strong which may exist between the original parties to the paper can either retard or defeat its collection. It is probably true, though the question does not at all arise in this case, that a holder, for value before maturity of accommodation paper will get a good title even with notice of its character, and the defense may not be interposed that the transaction between the original parties rested on no valid or valuable consideration in the absence of fraud or other circumstances which will impeach such or any other paper. In this respect probably there is a difference between accommodation paper and ordinary notes issued in the course of business. It is equally true that where such paper is received as collateral security for an antecedent debt, the holder is regarded as a holder in good faith and for value and his title cannot be impeached by proof that it was given without consideration and for the accommodation of one to whom *480 it was first issued. On the latter question there was at one time some differences of opinion amongst the courts, but there are now few states which do not recognize this to be the law. It was early settled in the supreme court of the United States and on final consideration the matter has been conclusively settled by that distinguished tribunal. The law has been followed in this state, and it is the law of Colorado as of most other state jurisdictions, that the taking of notes as collateral security as amply and abundantly protects the rights of the holder as though he had bought and discounted the paper in the usual and ordinary course of business. When the question of want of consideration arises where this defense is pleaded, the burden is on him who assails the integrity of the paper to show not only a want of consideration between himself and the original payee, but between the transferee and the then holder who may rest and rely confidently on the presumption of title which comes from the possession and production of the instrument. These matters are no longer the subject of debate, nor are they open to question in this state. 1 Daniel on Negotiable Instruments (4th ed.), § 165; Railroad Co. v. National Bank, 102 U. S. 14; Harger v. Worrall et al., 69 N. Y. 370; Ellicott v. Martin, Love § Co., 6 Md. 509; Duncan, Sherman & Co. v. Gilbert, 29 N. J. Law, 521; Merchants' Bank v. McClelland, 9 Colo. 608; McMurtrie v. Riddell, 9 Colo. 497; Haraszthy et al. v. Shandel, 1 Colo. App. 137.
At the conclusion of the trial the plaintiff asked an instruction respecting this burden of proof, stating the law as we have expressed it. The instruction was refused, no equivalent advice was given to the jury on the subject and the failure to give this instruction was manifest error because the plaintiff was entitled to have the jury directly and distinctly told the law governing the burden of proof and advised as to the duty thereby imposed on the defendant. The plaintiff was entitled to have the jury instructed that if the defendant failed -to establish to their satisfaction that *481 there was no consideration passing from the bank at the time it acquired title, the plaintiff was entitled to a verdict.
The court further emphasized the error by instructing the jury that if the bank received the notes sued on as additional collateral for a pre-existing debt then it was not a Iona fide holder and the notes were open to any defense which might exist between the original maker and the payee. This instruction is on its face against the settled law. If the notes were taken as collateral security or as additional collateral security, the transaction gave the bank a good title, and was as good between the parties as though they had become the discounters or purchasers of the note. A further vice which inheres in the instruction proceeds from the circumstance that there was not a particle of evidence introduced by the defendant or anybody else which either showed or tended to show the bank took the paper as collateral security, as additional collateral security, or in any way or form other than by its regular discount in the ordinary course of business for which they paid their currency. The evidence of Gove who was a witness produced by the defendant was clearly to this effect and in this he was supported by the testimony of Manly, that the original notes were sent to the bank, received by it without notice or knowledge of the transaction between Blake and Gumaer, and when the bank received them, that they were regularly passed by the discount committee; that the proceeds were placed to the credit of the various accounts standing in the name of the various payees, and that the credit thus received by those parties to whom credit was given was checked out by those companies and by Mr. Blake, and that the money was paid by the bank directly for the notes as upon the ordinary discount of paper received in the usual course of business. There was absolutely no testimony otherwise than as to the knowledge which came to Blake himself who was not an officer but only a director and a stockholder, that information concerning the character of the paper ever came to the board, to the executive officers of the bank, or to anybody charged with the transaction of its business. *482 It must be remembered in this connection that whatever deductions, inferences or conclusions may be drawn from the mass of exhibits heretofore referred to in nowise tends to prove that the bank or its officers had notice or knowledge of the character of the paper at the time they took it. Under these circumstances it is quite clear it was error for the court to give an instruction on the theory that if the notes were taken as collateral security for a pre-existing debt the bank was not a bona fide holder, or if taken under such circumstances the notes and all of them were open to any defense existing between the maker and the payee. It was error because the instruction did not embody the law, and it was equally erroneous because there was no testimony in the case to which the instruction was properly applicable. Thatcher v. Kaucher, 2 Colo. 698; The D. & R. G. R. Co. v. Robinson, 6 Colo. App. 432; Burlington & Colo. R. Co. v. Liuehe, 17 Colo. 280.
The jury were also instructed at the defendant’s request that if they believed there was no consideration moving from the payees to the maker, and if the maker signed the notes purely as and for an accommodation to Blake, acting for, and on behalf of the Needles National Bank, and Blake agreed with the defendant that said notes should only be used for a certain purpose, and Blake was at the time in the control and management of the operations of the bank to such an extent that he had authority for the bank from the officers and stockholders, that they should find for the defendant. This instruction is numbered three, and although we have not quoted it entirely, we have quoted enough of it whereon to predicate our conclusion that the instruction was erroneous under the law as we have stated it, and under the proofs as they were made. With respect to the consideration it made no difference to the defense whether there was any consideration at all as between the original parties so long as the holder paid value at the time he acquired title and that was within the maturity of the paper. In the next place the instruction was bad because it assumed that Blake had authority to act for *483 and on behalf of the bank. As will be later seen under the larv, he had and could have had no such authority, and it is very easily determinable that there was no competent evidence in the case to demonstrate as a matter of fact that he ever had it, even though there had been an attempt to confer it by any officer of the institution which there is none. The terms of the instruction “ in the control and management of its operations ” was liable to mislead the jury and it does not accord with the proof to assert that such was the position which Blake occupied. In the first place it is well understood, and the law is thoroughly settled that there is only one way by which a banking corporation can transact its business and that is through its board of directors and its regularly constituted officers. 1 Morse on Banks & Banking (3d ed.), § 124; 1 Morawetz on Private Corporations, § 531; Bank of United States v. Duncan, 6 Pet. 51; First Nat. Bank of Fort Scott v. Drake, 35 Kan. 564; Molson et al. v. Hawley, 1 Blatch. 409; Thatcher v. The West River National Bank, 19 Mich. 196; Western Nat. Bank v. Armstrong, 152 U. S. 346.
The record may be searched from end to end, and the most diligent scrutiny will absolutely fail to find any testimony whatever that Blake was ever authorized by the board of directors or by any officer of the bank to acquire from Gumaer or anybody else accommodation paper to be used by and for the benefit of the bank. When we remember that it is only the board of directors who can constitute one an agent for that purpose, yet, if we should still concede that the executive officers of the bank might delegate this authority to a third person whose acts would thereby bind the institution if done within the apparent scope of the authority of the executive officers, or within the scope of an actual authority conferred on them for the purpose, yet we should still be unable to find within the record any evidence on which that instruction could be predicated. It is directly denied by the only officers of the bank who were put on the stand by either party. No resolution of the board of directors of that institution was offered in evidence. The proof was direct to the *484 proposition that the president then in charge of the affairs of the bank took the notes, submitted them to the discount committee, and that neither he nor they had knowledge of the circumstances or conditions under which the paper was taken, and he testified distinctly and positively to the proposition that they were regularly discounted, the proceeds placed to the credit of the payees and subsequently paid out on the checks of the persons to whose credit they had been placed. Thus there is in the record not only an absence of proof tending to establish the existence of authority on the part of Blake, but there is direct evidence supporting the plaintiff’s contention that the bank took the paper in the regular and usual course of business, paid cash for it and may now recover from the maker.
There are several other instructions found in the record which would probably be subject to criticism, but since the rules which we have laid down and the principles which we have approved are broad and sufficient to establish the rights of the parties and furnish a basis on which the jury on the further trial can be correctly instructed respecting the proof, the burden, and the rights of the parties, we deem this a sufficient analysis of the errors laid.
There are some minor errors to which we must refer, not necessarily to determine all questions presented by the appellant but to prevent a recurrence of the mistakes committed by the nisi prius court during the trial of this case. Gumaer was permitted at some length, and with some particularity to state the conversation had between him and Blake at the time that the notes were executed. Except in so far as this conversation bore on the question of the want of consideration between the maker and Blake or the payees whom Blake represented, it was clearly inadmissible. The defendant undertook to show the close relations which existed between Blake, the bank, the railroad company, the mining company, and the reduction company. These matters were wholly unimportant and immaterial, the naked question being whether there was 'or was not consideration moving from Blake to Gumaer at the *485 time the notes were given. Blake’s statements as to his relations to those companies or as to his relations to the bank, were clearly inadmissible because a corporation or an individual cannot be bound by the statements made by a person who assumes to represent them, it or him, and if the agency he not otherwise properly established, the agent’s declarations are incompetent testimony. As we have already demonstrated a corporation can only act through its board of directors or executive officers, or duly authorized agent. When the proof is lacking respecting the authority given by the board or attempted to be conferred by the executive officers, the declarations of the person who assumes to act, cannot be admitted for the purpose of binding the corporation. The evidence under such circumstances would be clearly hearsay and undoubtedly inadmissible.
What we have already intimated in the statement of the case respecting exhibits numbered from thirteen to seventy-one, being the letters from Gove to Blake, are subject to the same general criticism and inadmissible on the same general hypothesis. Whether there are any of those letters which ought to be admitted, we do not attempt to determine, nor shall we examine each letter for the purpose of determining whether some one of them might be introduced, leaving the trial court on the subsequent hearing, in the light of the rule which we express, to inspect and determine which if any of them shall be received. The letters were in no sense original evidence; they were not competent to prove agency, they could not be admitted in order to corroborate Mr. Gove’s testimony, nor were they admissible to impeach him, and whatever conversation Blake had as to the transaction whereby the notes were given, was as early as May, 1893, and the very earliest of the letters introduced was written in July. So far as we have been able to discover the letters neither disclosed an original agency nor any ratification of any supposed agency by one having authority to bind the bank for the purpose. Under such circumstances the letters were improperly received. Connor v. The People, 18 Colo. 373; Jackson v. Etz *486 et al., 5 Cowen, 314; Strauss v. The Phenix Insurance Co., 9 Colo. App. 386; The U. S. v. The City Bank of Columbus, 21 Howard, 356 ; Hodge’s Executor v. First Nat. Bank, 22 Gratt. 51; Brown v. Mooers, 6 Gray, 451; Anderson v. The Rome W. & O. R. Co., 54 N. Y. 334.
The defe'ndant also offered Beardslee as a witness, who testified over the plaintiff’s objection respecting an accommodation note which he had given to Blake, but which had no connection, not even the remotest, with the transactions involved in this suit. This deal with Beardslee was made subsequent to the time the Gumaer notes were discounted. While there is a total absence of competent proof to show agency, and it was in no wise partially established whereby it could be aided by proof of this description, it is quite clear under the authorities already cited, that proof of this transaction with Beardslee in no manner tended to show the agency, or that the notes sued on were open to the defense that they were accommodation paper. The T. & H. Pueblo Building Co. v. Klein et al., 5 Colo. App. 348.
We have made no attempt to discuss all the errors assigned by the appellant, and have devoted our entire attention to those which were serious and fundamental and which of necessity compel the reversal of the case. The law and the rules of evidence by which the court must be governed on any subsequent hearing have been sufficiently stated in our judgment to both settle the rights of the parties and secure a just and fair determination of the controversy.
For the errors indicated this judgment must be reversed and the cause sent back for a new trial.

Reversed.

Thomson, P. J., not sitting.