### THE JUNCTION RAILROAD COMPANY *v.* REEVE, Administrator of DAILY.

Suit upon a subscription to the capital stock of the railroad company, payable by the conveyance of a specific tract of land, and conditioned that,

in case the company should decline to take the land at the price named, the subscription should be void.

*Held,* that the subscription was a simple proposition to put in the land at the price named, and until accepted by the company, there was no binding obligation upon the subscriber.

*Held,* also, that the acceptance of the proposition could only be made through the board of directors of the company, or, perhaps, through an authorized agent.

*Held,* also, that the consent of several members of the board, acting separately, and not shown to constitute a quorum, did not constitute a valid acceptance of the proposition.

*Quære.* Whether, under § 18 of appellant's charter, an agreement to accept would be valid and binding, unless entered upon the books of the company.

Nov. Term, 1860.

JUNCTION RAILROAD Co.
v.
REEVE.

Saturday, December 8.

APPEAL from the *Fayette* Common Pleas.

WORDEN, J.—This was a suit by the appellant against the appellee, upon two several subscriptions to the capital stock of the company, made by the defendant's intestate.

The first was a cash subscription, and need be no further noticed.

The second subscription is as follows, viz:

"We, whose names are hereto subscribed, do each agree to take the number of shares set opposite our names, of the capital stock of the *Junction Railroad Co.,* at fifty dollars for each share, to be paid in real estate in *Indiana* or *Ohio,* at a valuation to be affixed by three disinterested appraisers, to be appointed by the board of directors, and to be conveyed to the company by deed in fee simple, free from all encumbrance, within one year from the first election of directors. A failure to convey the real estate, as above specified, shall render this a cash subscription, and the amount shall be paid on the same terms as stock subscribed to be paid in money.

| Names. | No. of Shares. | Amount. |
|---|---|---|
| *Wm. Daily.* | 22. | $1100.00. |

" Mr. *Daily* subscribes for the above, to be paid by the conveyance to the company of one quarter section of land in *Delaware* county, about five or six miles from *Muncietown.* If the company should not take the land at that price, this subscription to be void.

(Signed,) "*William Daily.*"

Nov. Term,   The paragraph of the complaint based upon this subscrip-
1860.    tion, avers that the plaintiff "elected to take the said quarter
JUNCTION of land at the price fixed by said decedent in his said agree-
RAILROAD CO. ment," but that the decedent, though often requested, failed
v.
REEVE.   and refused to convey, &c.

This paragraph was answered by denial; also, by other
pleading, which we deem it unnecessary to notice specially.

There was a trial of the cause by the Court, and a finding
and judgment for the plaintiff for the amount of the cash
subscription only.

The appellant seeks to reverse the judgment, because the
amount found by the Court did not embrace the real estate
subscription. The necessary steps were taken to present the
question involved, and the evidence is set out.

On the trial below, a question arose under the issues,
whether or not the deceased had consented to the consolida-
ation of the *Junction Railroad Company*, with the *Ohio and
Indianapolis Railroad Company*, and the evidence upon
this point is discussed by counsel in this Court, at length.
We need not determine, however, whether we deem the evi-
dence sufficient to prove such consent, as we are of opinion
that upon another point the plaintiff failed to make out his
case, under the general denial, in respect to the real estate
subscription, and therefore, that the motion for a new trial
was properly overruled.

The subscription in question was clearly conditional; or
rather, it was a simple proposition to put in the land at the
specified price, in case the company would take it at that
price, otherwise the subscription was to be void. Until the
company agreed to accept it at the price named, there was no
binding obligation upon *Daily*. Until it was so accepted
there was no mutuality in the supposed contract. The case
of *The Boston and Maine Railroad* v. *Bartlett*, 3 Cush. 224,
is directly in point. There, the defendants had agreed, in
writing, to convey to the company a certain parcel of land for
the sum of $20,000, if the company would, within thirty days,
take the same. The Court say, "though the writing signed
by the defendants was but an offer, and an offer which might
be revoked, yet while it remained in force and unrevoked, it

Nov. Term, 1860.

JUNCTION RAILROAD CO. v. REEVE.

was a continuing offer during the time limited for acceptance; and, during the whole of that time, it was an offer every instant, but as soon as it was accepted, it ceased to be an offer merely, and then ripened into a contract. The counsel for the defendants is most surely in the right in saying that the writing, when made, was without consideration, and did not therefore form a contract. It was then but an offer to contract; and the parties making the offer most undoubtedly might have withdrawn it at any time before acceptance. But when the offer was accepted, the minds of the parties met, and the contract was complete. There was then the meeting of the minds of the parties, which constitutes, and is the definition of, a contract. The acceptance by the plaintiffs constituted a sufficient legal consideration for the engagement on the part of the defendants. There was then nothing wanting in order to perfect a valid contract on the part of the defendants. It is precisely as if the parties had met at the time of the acceptance, and the offer had then been made and accepted, and the bargain completed at once."

We have seen that the plaintiff alleged in the complaint an acceptance of the proposition by the company. This allegation, as well as all others, is traversed by the general denial. The burthen of proving this averment was on the plaintiff, and it only remains to inquire whether it was made out. The proof on that subject is as follows: It was shown that in the year 1850, the year when the subscription was made, *Caleb B. Smith*, Esq., was president of the company. He says, in relation to the acceptance, that "after a conversation with several of the directors, it was agreed that the land should be taken; and I informed Mr. *Daily*, within a year from the time of making the subscription, that the company would take the land, and requested him to make a deed. This he promised to do, but it was neglected and postponed from time to time, until I left the State and resigned the presidency of the company, in 1851." This is all the testimony that seems to bear upon this point, and it seems to us to be insufficient.

How was the company to make the acceptance? Undoubtedly through her board of directors, or perhaps through

an authorized agent. It does not appear that Mr. *Smith,* though president of the company, had any authority, as agent thereof, to make such acceptance. We do not understand his testimony as showing that he undertook, as the agent of the company, to make the acceptance. We understand him to mean by his testimony, that, after a conversation with *several of the directors,* (he being a director himself,) it was agreed by himself and those with whom he had the conversation, that the land should be accepted. The agreement to accept the land does not purport to have been made by virtue of any other authority, or in any other capacity, than as directors of the company. With how many of the directors Mr. *Smith* conversed, or by how many it was agreed that the land should be accepted, does not appear. "Several" is a very indefinite number. It may have included more or less than a majority of the whole board, which, by the charter of the company, consists of seven, but it implies less than the whole. Again, it does not appear that the conversation was had, or that the agreement to accept was made, at a meeting of the board, or under circumstances to make it binding on the company. In order to make the action of a board of directors binding on the company, the general rule is that a majority of the members of the board must attend the meeting at which the action shall be had. Red. on Railways, p. 20, note 7; 2 Kent. Comm. 293. When a majority, constituting a quorum, attend, a majority vote of those who attend, is sufficient. *Edgerly* v. *Emerson,* 3 Foster, (N. H.) 555. This, it is presumed, would be the rule under the charter of the plaintiff, which provides that " In all cases, except as may be specially provided, a majority of the board shall constitute a quorum to do business; and all the doings of such quorum at a regular meeting, shall be deemed the acts of the company to all intents and purposes." Local Laws, 1848, § 14, p. 472.

It is needless, in the present case, to inquire what would be the effect of an agreement on the part of all the members, separately made, and not when met as a board, to accept the land, because it does not appear that all so agreed to accept it. The evidence does not show that those who did so agree,

were met and acting as a board, or that they constituted a quorum. Were the plaintiff sued upon the contract, alleging an acceptance by her of the proposition, and the same evidence were introduced, it is clear to our minds that it would not establish a contract, on the part of the corporation, to take the land; and if not accepted on the part of the company, so as to make the contract binding on her, it can not, of course, be binding upon the defendant.

Another question here suggests itself, and that is, whether an agreement on the part of the board of directors to accept the land could be proven except by the records of the board. Or, in other words, whether an agreement to accept would be valid and binding on the company, unless entered upon the books of the company. In *Langsdale* v. *Bonton*, 12 Ind. 467, it was held, that "Where it is not in conflict with some provision of the charter, the acts of the directors of a corporation, if not recorded, may be proved by parol." In the charter of the appellant is the following provision: Section 18. "A journal of all the doings of the board of directors, with the proper stock and account books for the company, shall be carefully and accurately kept by the proper officers: any of which books may be inspected at any time, by any stockholders, two stockholders applying at the same time for that purpose." This section, it would seem, was intended, in part at least, for the benefit of stockholders; to give them the means of knowing what the directors are doing; how far, and by what contracts, they are binding the company. It may be, however, that it should be construed as directory, merely, and that the acts of the board would be valid, although no "journal of all the doings" be kept. This question we leave undecided, because the parol proof, admitting it to be valid, is insufficient.

Errors are assigned upon the ruling of the Court upon some demurrers filed, but no error is pointed out in the brief of counsel, and we do not perceive any.

*Per Curiam.*—The judgment below is affirmed, with costs.

*J. C. McIntosh* and *C. B. Smith*, for appellant.

*B. F. Claypool*, for appellee.