## NATWICK v. TERWILLIGER.

(No. 823; Decided May 17th, 1916; 157 Pac. 696.)
(Rehearing denied October 16th, 1916.)

CORPORATIONS—CONDITIONAL STOCK SUBSCRIPTIONS—EXECUTORY CONTRACT—PAYMENT IN PROPERTY—ACCEPTANCE OF SUBSCRIPTION—. ACTION BY TRUSTEE IN BANKRUPTCY.

1. A stock subscription conditioned on the corporation's acceptance of specified real estate in full payment therefor was rejected by the corporation with the assent of the subscriber, who at the time was leasing the real estate to the corporation and receiving rent therefor; *held*, that the trustee in bankruptcy of the corporation cannot enforce payment of the subscription, as it was withdrawn by rejection and defendant's assent thereto.

ON PETITION FOR REHEARING.

2. A stock subscription conditioned on the acceptance of specified real estate in full payment therefor is a conditional subscription, not binding upon the subscriber until accepted and is not a subscription on special terms.

3. A valid condition to a subscription for capital stock of a corporation must be performed within the time prescribed in the contract or within a reasonable time, if no time is

stipulated therein. If not performed within such time, the subscriber is discharged.

4. In an action by a trustee of a bankrupt corporation to recover a money judgment upon a subscription contract for its stock conditioned upon acceptance by the corporation of specified real estate in payment for the stock which was later rejected by the corporation; *held,* that plaintiff cannot recover, as the subscription was not binding unless accepted and had it been accepted was payable in specified property.

Error to District Court, Carbon County; Hon V. J. Tidball, Judge.

Action by Oscar Natwick, trustee in bankruptcy, against Charles D. Terwilliger. From a judgment for defendant, plaintiff brings error. The facts are stated in the opinion.

*Marion A. Kline* and *N. R. Greenfield,* for plaintiff in error.

Stockholders are liable for unpaid subscriptions. (Section 3988, Comp. Stats. 1910.) Insolvency of a corporation does not release from such liability. (Section 4, Bankruptcy Act.) Corporate creditors are represented by the trustee in bankruptcy after incolvency with authority to sue. (Allen v. Grant, 122 G. 552, 50 S. E. 494, 14 A. B. R. 340; Babbitt v. Read, 173 Fed. 712, 23 A. B. R. 254; Roney v. Crawford, 24 A. B. R. 638.) An assessment made by a bankruptcy court is collectable by the trustee. (Sanger v. Upton, 91 U. S. 56; Hawkins v. Glenn, 131 U. S. 319; Bernheimer v. Converse, 206 U. S. 516, 532; Gt. Western Tel. Co. v. Purdy, 162 U. S. 336; In re. Newfoundland Syndicate, 28 A. B. R. 124; Edwards v. Schillinger, 245 Ill. 231, 91 N. E. 1048; Childs v. Cleaver, (Me.) 50 Atl. 716; In re. Remington Automobile Co., 153 Fed. 345, 18 A. B. R. 392; 4 Thompson on Corporations, Sections 3697 and 3455.) Failure to issue certificates of stock does not release. (10 Cyc. 526.) The records of the Bankruptcy Court are competent evidence in this case. (Section 21, Bankruptcy Act.) Terwilliger by participating in the first meeting of stockholders in voting stock is estopped to deny

his ownership thereof. (10 Cyc. 531; 4 Thompson on Corporations, 2nd Ed., Sections 2810 and 2836; Casey v. Galli, 94 U. S. 673.) Conditions annexed to stock subscriptions may be waived. (1 Thompson on Corporations, Secs. 616 and 624; Wyman v. Bowman, 127 Fed. 257; Southern Co. v. Calendar, 29 Pac. 861.) Conditional subscriptions are not favored and where there is doubt as to the intention of parties, a subscription will be construed as an absolute subscription on special terms. (1 Cook on Corporations, (6th Ed.) Sec. 78; 1 Thompson on Corporations, (2nd Ed.) Sec. 632; Chamberlain v. Railroad Co., 15 Ohio St. 224; Railroad Company v. Parks, 86 Tenn. 554, 8 S. W. 842.) Defendant's subscription was upon special terms. (10 Cyc. 450; Bouton v. Dement, (Ill.) 14 N. E. 64; Upton v. Tribilcock, 91 U. S. 45; Sanger v. Upton, 91 W. S. 56; Jackson v. Traer, (Ia.) 20 N. W. 768; Morgan Co. v. Allen, 103 U. S. 508; Bank v. Am. Brick & Tile Co., (N. J.) 64 Atl. 920; Thomas v. Hotel Co., (Cal.) 117 Pac. 1041; In re. Eureka Furniture Co., 170 Fed. 485; In re. Putman, 193 Fed. 470; Miller v. Dredging Co., (Ia.) 137 N. W. 512.) Although payable in property the subscriber is liable on his subscription to creditors of the corporation. (10 Cyc. 452; Singer v. Given, 61 Ia. 93; 15 N. W. 858; Bank v. Alden, 129 U. S. 372, 32 L. Ed. 725.) If payable in materials and not so paid, it is demandable in money. (10 Cyc. 482; 4 Thompson on Corporations, Section 3968; Haywood Co. v. Bryan, 51 N. C. 82; In re. Monarch Corporation, 203 Fed. 667; Enslen v. Nathan, 136 Ala. 412, 34 So. 929; Henderson v. Turngren, 9 Utah 432, 35 Pac. 495.) The rejection of the subscription and release of defendant by the board of directors was void as to creditors. (Haines Co. v. Highland Co., 88 Pac. 865; Curtis. v. Salmon River Co., 130 Cal. 345, 62 Pac. 552; Bouton v. Dement, (Ill.) 14 N. E. 62; Jackson v. Traer, (Ia.) 20 N. W. 768; Upton v. Tribilcock, 91 U. S. 45; Vol. 20 Am. & Eng. Ency. Pl. & Prac. 697; Zirkel v. Opera House Co., 79 Ill. 334; Payne v. Bullard, 23 Miss. 88, 55 Am. Dec. 74; Balfour v. Baker

City Gas and Electric Co., 27 Ore. 300, 41 Pac. 164; Hall
& Farley v. Ala. Term Co., 39 Southern, 285, 2 L. R. A. (N.
S.) 130; Howell v. Crawford, 77 Ark. 12, 89 S. W. 1046;
Hall v. Henderson, 126 Ala. 449, 26 So. 531, 85 Am. St.
Rep. 53, 61 L. R. A. 621.)    Parties are bound by their
pleadings.    (Pardee v. Kuster, 15 Wyo. 368, 91 Pac. 836.)
Defendant was present at the stockholders' meetings and
acted as a director up to the time of bankruptcy. This was
admitted by the pleadings. The corporation could not com-
pel performance as the agreement was within the Statute of
Frauds.    (Compiled Statutes 3751, 1910; Beckman v.
Mepham, 97 Mo. App. 161, 70 S. W. 1094; Begley v. Tread-
way, (Ky.) 93 S. W. 1045; Laufer v. Powell, (Tex.) 71
S. W. 549.) The corporation was held indebted on March
11th, 1908, the date of said alleged release, and that state of
things is presumed to have continued. (Hartford Insurance
Co. v. Kahn, 4 Wyo. 364, 34 Pac. 895; Weidenhofft v.
Primm, 16 Wyo. 340, 94 Pac. 453; Jones on Evi. 58; 2
Chamberlayne on Evidence, Sec. 1047.) The corporation was
without authority to release a subscriber to the injury of its
creditors.    (Chrisman-Sawyer Banking Co. v. Independence
Mfg. Co., (Mo.) 68 S. W. 102; Sprague v. National Bank
of America, 172 Ill. 149, 50 N. E. 19; Indiana Novelty Co.
v. McGill, 15 Ind. App. 1, 43 N. E. 464; Kentucky &c., As-
signees, v. Schaffer, 85 S. W. 1098, 120 Ky. 227; Smathers
v. Bank, 135 N. C. 410, 47 S. E. 893; MacBeth v. Ban-
field, 45 Ore. 553, 78 Pac. 693; Shaw v. Gilbert, 111 Wis.
165, 86 N. W. 188; Hall & Farley v. Improvement Co., 143
Ala. 464, 2 L. R. A. (N. S.) 130.

*McMicken & Blydenburgh,* for defendant in error.

The question here is not whether a certificate of stock
was issued, but whether the conditions of the contract were
carried out; there is no estoppel alleged in the pleadings.
(16 Cyc. 808.)    It is incumbent upon plaintiff to establish
estoppel.    (Grier v. Union Life Insurance Company, 217
Fed. 287; Metropolitan Life Insurance Co. v. Howle, 68
N. E. 4.)    A conditional subscription contract cannot be

converted into an unconditional contract by the courts or by the corporation. (Durlacher v. Frazer, 8 Wyo. 74.) The case of Wyman v. Bowman is not in point, as to the facts. There is no question of waiver in this case; the trust fund doctrine applies only to the assets of insolvent corporation. (Hart Co. v. Rogers Co., 19 Wyo. 35; Hollins v. Brierfield Co., 150 U. S. 371.) The directors have authority to reject the subscription or make any other lawful contract, as it was a going concern. (Macbeth v. Banfield, 106 Am. St. Rep. 670; Graham v. LaCrosse Co., 102 U. S., Co-op. Ed. 26.) None of the authorities cited by plaintiff with reference to the cancellation of subscriptions of stock are in point, when the facts of this case are considered. The rejection of the subscription and the assent thereto was valid and released the subscriber. (10 Cyc. 780-795.) A contract releasing a subscriber even if voidable will stand until attacked on proper grounds. (Clark & Marshall.Corp. Vol. 3, 2299 and 2300; Twin Lick Oil Co. v. Marbury, 91 U. S. 587.) A contract between a corporation and its officers is not void, but voidable. (Durlacher v. Frazer, 2 Wyo. 75; Thomas v. Brownville Ft. K. & Pac. R. R. Co., 109 U. S. 27; 10 Cyc. 473.) Cancellation of share subscriptions may be invalid as to existing creditors, yet good as to future creditors. (20 Cyc. 453; Erssine v. Peck, 13 Mo. App. 280, 33 Mo. 465; Johnson v. Lullman, 88 Mo. 567; Taylor v. Miami Exporting Co., 6 O. St. 176; Hill v. Silvey, 3 L. R. A. 154; Republic Life Ins. Co. v. Swigert, 12 L. R. A. 328), and as against other stockholders not objecting. (Dunn v. Howe, 96 Fed. 160.) Terwilliger signed the subscription list conditionally and the vote of the directors with reference thereto is a sufficient memorandum to satisfy the Statute of Frauds. (Lambkin v. Baldwin Co., 44 L. R. A. 786.) Plaintiff's remedy, if any, was against the property. (Morgan v. Lewis, 46 O. St. 1.) Solvency is always presumed until the contrary is shown. (7 Enc. Ev., Page 482.) No stock was issued, no stock was forwarded, and no stock was purchased back by the corporation. The subscription

was conditional. (Bank v. Brown, 92 Am. St. Rep. 339.) The case of Morgan v. Lewis, 46 O. St. 1, is quite similar on the facts, except that a deed was made to the company and the company deeded the land back. Under the terms of the contract the shares were not to be issued until the property was delivered, and the property delivered only when the shares were issued. The parties had in contemplation a concurrent transaction. (Walter A. Wood Harvester Co. v. Jefferson, 59 N. W. 532.) There was no escape from the conclusion that if the action of the committe was void, or if the corporation could not rescind its contract, then the matter was placed as it was prior to the resolution of March, 1908, and the corporation is the equitable owner of the property, while defendant is the owner of the stock not paid up and not subject to call by creditors, so that the assignee of trustee could only in such case look to the property, but could not get a money judgment in this case. When the stockholders ratified the arrangements to rescind the contract, they ratified the whole proceeding. (10 Cyc. 390.)

*Marion A. Kline* and *N. R. Greenfield,* in reply.

The facts in the case of Wood Harvester Co. v. Jefferson, 59 N. W. 532, cited by defendant in error, were quite different from an action by a trustee in bankruptcy. Under Sections 47 and 70 of the Act, the proposition of forfeiture was not considered at the trial; the Terwilliger stock was not issued to other subscribers. The records of the corporation show that Terwilliger subscribed for and voted twenty-five shares. Defendant took possession of the shares of stock and exercised ownership over the same by voting the shares at the first meeting; it was also shown that he attempted to sell the shares to another. It was his property. He was never legally released from his obligation to pay for the shares.

SCOTT, JUSTICE.

The plaintiff in error as Trustee in Bankruptcy of the estate of the "Copper City Commercial Company," which

had theretofore been doing a general mercantile business at
Encampment, Carbon County, Wyoming, and had been ad-
judged to be a bankrupt by the U. S. District Court within
and for the District of Wyoming, brought this action against
the defendant, Charles D. Terwilliger, to recover the sum
of $2,400, an alleged balance due upon a subscription to the
capital stock of the plaintiff at the time of its organization.
The case was tried to the court without the intervention of a
jury and the court found and gave judgment for Terwilliger
and. the Trustee brings error.

Plaintiff alleged that the defendant subscribed for twenty-
five shares of said stock of the par value of $100 each, and
had paid for one share only. The defendant admitted having
subscribed conditionally but not absolutely for such stock,
in that he was to be permitted to turn in as payment for the
stock subscribed for a lot and store building thereon in the
town of Encampment to be used as company assets, and
that he should not be liable on the subscription unless it was
accepted on that condition. It is shown by the evidence
that the word "conditional" was written by him after his
signature on the subscription list, and it is further shown
that at the time of the subscription Fry, who as organizer
was circulating the subscription list of the company, gave this
written statement of the conditions to Terwilliger, viz.:

"ENCAMPMENT, WYO., 6-26-1907.

"This is to certify that C. D. Terwilliger having this day
signed the original subscription list of the Copper City Com-
mercial Company conditionally for twenty-five shares of
stock par value $2,500, it is understood that said company
shall take in full payment for said 25 shares of stock lot 4,
block 22, Townsite Grand Encampment, in full payment for
said subscribed stock, and it is understood that he shall
not be liable for said subscription unless the said company
accepts same under said conditions.

"Said stock to be fully paid and non-assessable.

"W. B. FRY, Organizer."

The company entered into possession and occupied the lot
and store with this understanding from the organization un-

til March 11, 1908, when at a meeting of the executive committee, it was resolved as follows:

"Special Meeting of the Executive Committee of the Copper City Commercial Company. March 11th, 1908. 5 p. m. W. B. Fry acted as chairman in the absence of J. J. Monahan. C. D. Terwilliger acted as secretary.

"Moved and seconded that inasmuch as the deed to lot 4, block 22, in the Town of Grand Encampment, Carbon County, Wyoming, has not been delivered to the company in accordance with the original agreement, the President and Secretary of the company be and they are hereby instructed not to issue any stock of this company in payment therefor. Motion carried.

"Bill of C. D. Terwilliger rendered for rent for the store building at $37.50 per month from July 22nd, 1907, to March 22nd, 1908, with credit of $100 for payment of one share of stock originally subscribed for by the said C. D. Terwilliger, balance due, $200.

"Motion made and seconded that the bill be allowed and the manager be and he is hereby directed to pay the same in trade, pursuant to agreement to receive same in trade, and that receipt be given for payment of one share. Motion carried.          (Signed) C. D. TERWILLIGER, Sec.

"(Signed) W. B. FRY, Chairman."

This action was ratified at the annual stockholders' meeting early in August, 1908; and after the Executive Committee meeting the company occupied the lot and store building upon a rental basis of $35 per month, up to November, 1908, the time of the bankruptcy proceedings by certain creditors and the appointment of Natwick as trustee under the National Bankruptcy Law.

As already stated, it is claimed that Terwilliger subscribed for twenty-five shares of the capital stock at the par value of $100 per share when solicited by one Fry, who was promoting the corporation. On July 12, 1907, the subscription list was presented to the stockholders at a meeting when the following proceedings were had: "On

motion, duly made and carried, 25 shares of the capital stock shall be issued to ·C. D. Terwilliger, upon the delivery of a good and sufficient deed to lot 4, block 22, in the Town of Encampment, Wyoming, as per condition and agreement when he signed said subscription list, said deed to be accepted in full payment of said stock subscribed." The stock subscription list was handed in and returned to the other subscribers at the organization meeting and including Terwilliger's conditional subscription was satisfactory to the other subscribers and ·they proceeded to organize the corporation and embarked in the business for which the corporation was created, entering upon and occupying the lot and store as a place of business under this arrangement until March 11, 1908, when the executive committee declined to issue more than one share of stock to Terwilliger, and that upon a different arrangement, and to place the company's occupation of the store building on a rental basis at $35 per month from the time of the incorporation of the company and gave him credit for one share of stock at the sum of $100, that being the par value of one share of stock which was then issued to him.

The arrangement made authorizing the defendant in error to pay his subscription in property at a fixed value, and not to be otherwise liable, was satisfactory to the parties, and the corporation went into possession of the lot and store in pursuance of such understanding. It was an executory contract and by performance of conditions precedent could have been made into a binding contract. Neither of the parties did this. (Minneapolis Threshing Machine Co. v. John A. Davis (January 30, 1899), 40 Minn. 110, 41 N. W. 1026, 12 Am. St. Rep. 701, 3 L. R. A. 796.) No deed to the property was delivered or demanded, and the stock was not issued; and in that situation the company finally concluded not to accept the subscription on the conditions named. The evidence shows certain reasons for this, and that it arose generally out of the desire of the company not to take the property or to issue the stock to the defendant.

This refusal to accept was assented to by the defendant, and he took the one share on the terms named by the executive committee, whereupon his subscription, which was a mere offer until accepted, was, in effect, withdrawn. The condition of Terwilliger's subscription involved a condition precedent to his becoming liable for the stock; and he did not at any time become liable to pay for the stock in money, or otherwise than by conveying the property, and that the company declined. As already stated, the contract was executory, while the suit is upon an executed contract. No tender of title deed or of stock in exchange therefor is made as a preliminary—the parties stand in the same relation to the subject matter of the contract as at the beginning.

Aside from this the amount of indebtedness and assets on March 11, 1908, is not shown. It cannot be said from the record that the act of that date was (1) one of insolvency, or (2) contemplated insolvency, and (3) within four months of the institution of the suit by creditors under the National Bankrupt Law. The contract is mutual and executory. No preliminary steps were taken by either party as a condition precedent to enable him or it to maintain the suit. The right to maintain a suit is originally fixed by the parties, and when the conditions change so as to affect such right that fact must be judicially determined so as to determine the method of procedure. In the case here the suit is based upon the contract as originally made. Courts do not, nor can they, make or change or substitute contracts between the parties, and yet plaintiff will have accomplished that if permitted by this court to carry out his purpose as disclosed by his case. The agreement on March 11, 1908, in any event must be sustained unless made by the corporation when insolvent or in contemplation of insolvency or as an act of insolvency under the National Bankrupt Law. The evidence is insufficient to base the right to proceed upon either of these grounds.

If the right to make such new contract depended upon the question whether the corporation was in failing circum-

stances at the time and also whether the contract was made in view of insolvency, the fact of insolvency was not shown. There is no room for the application of the trust fund doctrine in this case. Nor is it necessary to consider when, by whom, or under what circumstances a subscription for stock may be released. The defendant's subscription was conditional, and the condition was not complied with by the company. The judgment will be affirmed.     *Affirmed.*

POTTER, C. J., and BEARD, J., concur.

BEARD, J. I concur in the conclusion arrived at on the ground that under the contract the only obligation assumed by defendant in error was to convey the lot to the company in consideration for capital stock of the company. No stock having been issued to him and no demand for a deed to the lot having been made, the present action cannot be maintained.

### ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

Counsel for plaintiff in error has filed a petition for rehearing in this case. The action was brought by the trustee in bankruptcy of an insolvent corporation to recover a sum alleged to be due from the defendant upon a subscription for stock, and the judgment in defendant's favor was affirmed on the ground that the condition upon which the subscription was made had not been complied with on the part of the company; Justice Beard concurring specially, on the ground that defendant's only obligation was to convey certain property in consideration for the stock, and that as the stock had not been issued and the deed had not been demanded, the action was not maintainable.

It appeared that prior to the incorporation and organization of the company the defendant signed the original subscription list for twenty-five shares of stock, adding after his signature the word "conditional," and at the same time received from the organizer of the company, who circulated the subscription list, a written statement certifying to the fact that defendant had signed the list conditionally, and

that it was understood that the company should take in full payment for the stock a certain town lot, and that he should not be liable for said subscription unless the company should accept the same under said conditions. (See former opinion, 157 Pac. 696, 697.)

The defendant was present at the organization meeting of the stockholders and voted 25 shares of stock, but no stock had been issued to him or to any one who had signed the list, and his subscription had not then been accepted. But the evidence shows, we think, that the other subscribers, or at least all who became stockholders, knew the terms and conditions of defendant's subscription, and that there was at least a tacit understanding that it would be accepted upon the said conditions, and that with that understanding the defendant participated in the meeting. He was selected and acted as secretary of that meeting, and was elected as one of the directors of the corporation then being organized. He was also present at the first meeting of the directors held on the same day and was elected secretary of the company. At that meeting the proceedings were had with reference to his subscription, which are copied in the former opinion from the record of the meeting in the evidence, viz.: A motion was made and carried that 25 shares of stock be issued to the defendant "upon the delivery of a good and sufficient deed to lot 4, block 22, in the Town of Encampment, Wyoming, as per condition and agreement when he signed said subscription list; said deed to be accepted in full payment for said stock subscribed"; the lot thus described being the property offered by defendant as shown by the organizer's written statement of the fact and conditions of the defendant's subscription.

On the trial the defendant was called as a witness for the plaintiff and examined with reference to the company's records, including the record of the first meeting of the directors, and upon cross-examination he testified that he had executed a deed of the lot to the corporation pursuant to the resolution referring to his subscription, but the deed does not appear to have been delivered.

By a resolution adopted on March 11, 1908, by the executive committee, quoted in the former opinion, the president and secretary were directed not to issue any stock to the defendant in payment for the lot aforesaid, "inasmuch as" the deed thereto had not been delivered to the company in accordance with the original agreement, and it was provided that rent should be paid the defendant for the use of the building by the company. It is stated in the former opinion that the evidence shows certain other reasons for that action, and that it was the result generally of the company's desire not to take the property or to issue the stock to the defendant upon his subscription, and before concluding this opinion those reasons will be stated more in detail, for they tend to explain what was intended by the resolution aforesaid, and the ground for the statement in the former opinion that by said action the company finally concluded not to accept the subscription on the conditions named.

It was contended on the original hearing that the subscription was not conditional, but a subscription on special terms as to payment; that it was accepted by the company at the time of its organization, and that the defendant then became liable to pay for the stock either in the property mentioned or in money; that having failed to convey the property he became liable upon his subscription for the par value of the stock; and that the action of the executive committee was invalid as against creditors as a release of the defendant's liability to pay for the stock. It was also contended that defendant's liability is shown by the fact that he voted the shares at the first meeting of the stockholders, accepted the office of director and secretary and member of the executive committee, and acted in those capacities, and that the company went into possession of the property aforesaid and occupied it. The same contentions are again made by the petition for rehearing and the brief in support thereof; and counsel states in the brief unqualifiedly the following proposition as settled law: That a

condition in a subscription to the capital stock of a corporation by which the subscriber agrees to pay in labor or property is a condition subsequent, and the subscriber becomes a stockholder immediately upon the organization of the company. Aside from the rule that in a subscription like the one at bar an acceptance by the corporation is essential to constitute it a contract at all, which is not recognized by the proposition as stated by counsel, we are of the opinion that such a subscription may be so made as to entitle it to be called and construed as a conditional subscription. It may not be very material whether the subscription in this case be considered as a conditional subscription or one on special terms, for if the latter an acceptance by the company would be necessary, whereupon the subscriber's liability would be governed by the special terms, and he would not be liable to pay for the stock in money except in case of a refusal or inability on his part to convey the property. (1 Morawetz on Priv. Corp., 2nd Ed., Sec. 82.) And we are of the opinion that the evidence does not show a refusal by the defendant to convey, but, on the contrary, a conclusion by the company not to take the property, to which the defendant assented because of a determined opposition to taking the property that had developed among the stockholders.

But we adhere to the view that this subscription was conditional. It was not only so specified on the subscription list, and in the written statement that it was conditional upon the company taking the property in full payment for the stock, but it was also provided that the subscriber "shall not be liable for said subscription unless said company accepts same under said conditions." That is to say, the condition of the subscription was that the company shall take the property in full payment, and that no liability shall be incurred by the subscription unless accepted on that condition, viz.: that the company "shall take" the property. In thus requiring that his liability be expressly limited, the defendant did what may properly be done, as said in Thomp-

son on Corporations in these words: "If a subscriber desire to make his liability depend upon the performance of some stipulations by the corporation, it is very easy for him to do so in express terms." The author was there discussing the rule for determining the real meaning of a contract of subscription made upon a condition subsequent, and had stated what is of course the law that as in the construction of conditions in other contracts the intention of the parties is to be ascertained. (1 Thomp. on Corp., 2nd Ed., Sec. 632.) And that the intention of the parties is the controlling question is stated elsewhere in the work cited. (Secs. 626, 627.) And by other text writers. (1 Morawetz on Priv. Corp., 2nd Ed., Sec. 90; 1 Cook on Stockholders and Corp. Law, 3rd Ed., Sec. 85.) Mr. Cook says in the section cited that "conditional subscriptions, like other contracts, are to be construed reasonably and according to the intent of the parties, as indicated by the language used in the contract. The circumstances under which the subscription was made are also to be taken into consideration." In a case often cited in support of this rule it is held that whether a condition be precedent or subsequent "is a question purely of intent; and the intention must be determined by considering not only the words of the particular clause, but also the language of the whole contract as well as the nature of the act required and the subject matter to which it relates." And applying that rule a subscription for stock was held to be upon a condition precedent, because so intended and understood by the parties, and that the condition was to be strictly performed before the subscriber could be held liable. (Bucksport & Bankor R. R. Co. v. Brewer, 67 Me. 295.)

That defendant's subscription was intended as and understood to be one upon condition and not absolute is evident not only from the terms thereof as expressed in the writing aforesaid and the addition of the word "conditional" to the defendant's signature on the list, but also from the terms of the motion referring to it adopted by the directors, providing for issuing the stock only on delivery of a deed to the

property, "as per condition and agreement when he signed said subscription list." And especially must this be so in view of the distinction between a conditional subscription and a subscription on special terms. That distinction is stated in Thompson on Corporations (2nd Ed., Sec. 626) as follows:

"The first distinction to be noted is, as already suggested, that a conditional subscription does not make the subscriber a stockholder, nor render him liable on his subscription, until the performance of the condition or the happening of the specific contingency. On the other hand, a subscription on special terms is an absolute subscription, which makes the subscriber a stockholder and renders him liable as such from the time when his subscription is accepted, whether the conditions are performed or not. The special terms attached to a subscription are regarded as independent stipulations, the remedy for the breach of which is an action against the corporation for damages."

In view of the language employed in stating the conditions upon which this subscription was made, and in the recorded action of the directors of the corporation thereon at their first meeting, it is clear to us that it was intended and understood that the subscription was conditional upon the property being taken by the corporation at the par value of the stock and in full payment therefor, and that there should be no liability on the subscription if that was not done. A similar subscription was considered in Junction Railroad Co. v. Reeve, 15 Ind. 236, cited in a note to Section 600 in Thompson on Corporations (2nd Ed.). The subscription in that case was for stock to be paid in real estate to be conveyed to the corporation within a stated period, but it was also provided by the subscription that if the company should not take the land at the price, the subscription was to be void. The court said:

"The subscription in question was clearly conditional; or rather it was a simple proposition to put in the land at the specified price, in case the company would take it at that price, otherwise the subscription was to be void."

The provision in the statement of the terms of the subscription here in question that there was to be no liability unless accepted under the conditions stated is in effect one declaring the subscription to be void unless accepted on the conditions stated—that the company *take,* not merely agree to take, the property in full payment for the stock. . We perceive no reasonable ground for holding that the defendant intended or that the company understood that his only right or remedy would be to recover damages · if the company should decline to issue the stock or take the property.

We do not agree with counsel's contention that a subscription payable in property is uniformly held by the authorities to be a subscription on special terms. It is true that some text writers, referring generally to such a subscription, say that it is not, properly speaking, a conditional subscription, but an absolute subscription on special terms. (See Morawetz on Priv. Corp., 2nd Ed., Sec. 82.) But Mr. Cook, in discussing the subject of conditional subscriptions, says that any condition which can legally be performed or complied with by the corporation may be a condition to a subscription for stock. And that "the condition may be that payment shall be in labor or materials." And again: "In general, however, subscriptions to the capital stock of a corporation may be conditional as to time, manner or means of payment, or in any other way not prohibited by statute, or the rules of public policy, and not beyond the corporate powers of the corporation to comply with." (1 Cook on Stockholders & Corp. Law, 3rd Ed., Sec. 83.) Whatever may be the general rule with reference to the term to be applied to subscriptions payable in property, or their effect respecting the subscriber's liability, we are convinced that the subscription before the court in this case was a conditional subscription, and that to hold otherwise would disregard the clear intention and understanding of the parties, as indicated by the written statement of the terms and· conditions of the subscription, and by the language of the motion adopted with reference to it at the first meeting of the directors. ·

Assuming that the action taken upon the subscription by the directors at their said first meeting constituted an acceptance thereof and was so intended, something more was necessary to render the defendant liable, at least to pay for the stock in money. The rule in such case is stated in Cook on Stockholders and Corporation Law (3rd Ed.) as follows:

"The acceptance by the corporation of a conditional subscription is necessary to the formation of the contract. Until such acceptance the conditional subscription is but a continuing offer. After acceptance the subscriber is bound, until performance of the condition by the corporation, to await such performance; he cannot withdraw the conditional subscription after it has been accepted. It seems, however, that if the performance of the condition is delayed unreasonably by the corporation, the conditional subscriber will be thereby released from his obligation." (Sec. 84.) "A condition to a subscription for stock must be performed or complied with before the subscriber can be compelled to pay such subscription. * * * * A conditional subscriber is not a stockholder or member of the corporation until after the condition is performed. Whether or not the condition has been performed is a question of fact. Performance may be proved by parol or by the records of the corporation." (Sec. 86.) "Subscriptions payable in property are not subject to calls, and a demand for the property must be made by the corporation." (Sec. 89.)

The rule is stated in Thompson on Corporations (2nd Ed.) as follows: "In cases of unconditional subscriptions the acceptance by the corporation renders the subscription binding. But in the very nature of the case this cannot be true as to conditional subscriptions; their binding effect depends ultimately on the performance of the condition. It is evident, therefore, that the mere acceptance of a conditional subscription is only in the nature of an agreement to entertain the proposition of the subscriber, and does not, without more, render the subscription binding. Some of the cases proceed upon the theory that there must be an

acceptance and then a performance of the condition, or that the two may be concurrent. In such cases the effect of the acceptance is to give the subscriber a conditional status which is confirmed by the performance of the condition. Another class of cases proceed on the theory that the performance of the condition is an acceptance of the subscription; in such cases the acceptance and performance are identical, and their effect is to make the subscription binding. The rule as gathered from the effect, rather than the direct holdings of the cases, seems to be that the conditional subscription is in the nature of a continuing offer which may be withdrawn before acceptance; but after acceptance in any manner by the corporation the subscriber is bound until the corporation has performed the condition, or for a reasonable time; or, in other words, he must wait a reasonable time for such performance by the corporation. After acceptance and before performance, or a reasonable time for performance, he cannot withdraw or otherwise revoke such conditional subscription. * * * * When subscriptions are made upon conditions, and the conditions have been complied with, the subscribers thereupon become entitled to all the rights and privileges of stockholders, and they come under correlative obligations and duties of holders of stock in a corporation." (Sec. 601.) "That a valid condition to a subscription for the capital stock of a corporation must be performed before a subscriber can be compelled to pay his subscription, where there has been neither waiver nor estoppel, is a proposition that is universally supported by the authorities; and the performance must be within the time prescribed in the contract, if any is stated, or within a reasonable time, if none is stipulated, and if not performed within such time the subscriber is discharged." (Sec. 603.)

The validity of the condition is not questioned in this case, nor do we see any reason to doubt its validity. The statute expressly authorizes the directors of any corporation of the kind here involved to purchase property neces-

sary for its business and issue stock to the amount of the
value thereof in payment therefor, and provides that the
stock so issued shall be declared and taken to be full stock,
and not liable to any further calls, nor the holders thereof
to any further payments under the provisions of the statute
for the demand and payment of money upon stock sub-
scriptions and making stockholders severally and individ-
ually liable to creditors to the amount of unpaid assess-
ments on the stock held by them respectively. (Comp. Stat.
1910, Sec. 3989.) And there is no statute in this state ap-
plicable to such a corporation requiring a certain amount or
proportion of the capital stock to be subscribed as a condi-
tion precedent to incorporation or acquiring a corporate
existence or to the corporation engaging in business, or
limiting the authority of one who solicits or takes a sub-
scription.

We were convinced when this case was decided, and re-
main of that opinion, that neither waiver of the condition
nor estoppel is shown by the evidence, but that, on the con-
trary, the defendant participated in the organization meet-
ing, accepted the office of director and secretary and acted
in those capacities, with the understanding and expectation
that the shares of stock conditionally subscribed for by
him as aforesaid were to be issued as full paid stock in
payment for the property offered by him. The delay re-
sulting in the final action upon the subscription, shown by
the resolution adopted in March, 1908, is explained by the
testimony, which he referred to generally in the former
opinion and will be more fully stated in this.

It is argued in the brief that when the defendant was
allowed to vote the shares, and the company moved into and
occupied the building, the company did all it was obligated
to do, whereupon the defendant became the owner of said
shares of stock and obligated to pay therefor in money or
money's worth, and that the company's right to maintain
an action on the contract was then complete. But if the
defendant became a stockholder through the act of the com-

pany in allowing him to vote the shares at the organization meeting, supplemented by its act in moving into and occupying the building, it must be because those acts amounted not only to an acceptance of the subscription upon the condition named, but to a taking and acceptance of the property, for such occupation of the property was with the defendant's knowledge and at least his tacit consent; and thereby also the stock became full paid stock, without any further liability thereon, though the defendant as the holder of the legal title to the property might be required to execute and deliver a deed to the company, the equitable owner. And that would be the situation now, if the defendant had become a stockholder, as claimed, and if the action taken on March 11, 1908, was invalid, though it would not aid the plaintiff in this action to recover the par value of the stock in money, since it is not shown that defendant refused to convey the property or that he was or is incapable of making a valid conveyance. The company certainly did not pay for the property unless it was taken in full payment for the stock, and it had no right to take or occupy it, so far as the record shows, prior to March 11, 1908, except that acquired by the subscription and the acceptance thereof, which required it to be taken, if at all, in full payment for the stock. There is this much further evidence to show that the property was occupied by the company pursuant to the subscription and the condition thereof, and the understanding that defendant's stock, if he was a stockholder at all, or entitled to act as such, was fully paid. The property was entered in the company's ledger as an asset at a valuation of $2,700, but without description; the entry being: "Real Estate, January 1, Inventory $2,700." It was explained as referring to said property, as the company owned no other real estate. A counter entry was made to balance it after the adoption of the resolution of March 11, 1908. But it does not appear that defendant knew of either entry. Mr. Fry, the organizer and manager of the company, who was examined about the entry, testified on cross-examination by defendant's counsel as follows:

"Q. This real estate, then, that you have testified to, was turned over to the company for twenty-five shares of stock for Mr. Terwilliger? A. That is right; yes, sir. Q. And that was all he was to pay—that was the agreement with the corporation? A. Yes, sir; it was. Q. Then, having entered this, why did you order this entry in this book? A. I don't remember that item, Mr. Blydenburgh. I don't know whether I did or not. Q. At the time, then, this entry was made, January 1, 1908, you considered that real estate as the property of the corporation, did you? A. Yes, we did. Q. And that the board of trustees had accepted the condition? A. The condition—there was a condition. Q. And that they had accepted the condition and become the virtual owners of the real estate—that is the reason you made this entry? A. Undoubtedly."

The same witness on being recalled as a witness for the defense again testified about that matter. His attention was called to the entry of January 1 in the ledger, and to an entry on the opposite side of the account showing a credit which balanced it, viz: "March 31, 1908, $2,700," and was asked as to the latter entry this question: "What did that consist of?" He answered: "That was to balance that account when the stock was turned back, when we decided not to take the store building." He was then interrogated and testified as follows:

"Q. There was no cash passed, but simply a return of that stock? A. Yes, sir. Do you want me to explain what that $2,700 was for? Q. You have explained that. * * * Q. Now, I believe you stated, Mr. Fry, in your examination for the plaintiff, that you considered this property, from the date of the organization of the company until March, as the property of the company? A. Yes, sir. Q. After that time, what did you consider it? A. We considered it the property of Mr. Terwilliger, and paid rent on it from then. Q. You considered before this meeting of March 11, 1908, that the company had fulfilled the conditions? A. Yes. Q. And thereby became the owner of the property? A. Yes. Q. You may explain, then, why

and how this meeting of March 11, 1908, came about? A. Well, I had sold some stock to some parties at Elk Mountain and they had agreed to finance the business over there, to increase the business. We agreed that the old building was not large enough, and we talked of a new building across from the Encampment Bank. In fact, these parties went to Mr. Blank to draw plans for this new building, and they wanted that agreement with Mr. Terwilliger cancelled. They said that, as long as the stock was not turned over or deed made, and the building wasn't large enough, that it would be to our advantage to cancel that agreement and put up a new building in a better location. And then I went to Mr. Terwilliger with the proposition. Q. The object of this meeting was, then, to cancel Mr. Terwilliger's stock. A. That is it, exactly. Q. How many shares did Mr. Terwilliger own in that company after that meeting. A. One share. Q. How many shares, at meetings of stockholders after that time, did Mr. Terwilliger ever vote? A. One share."

In our opinion the evidence must be understood as showing, either that the defendant had paid for the stock through the taking of the property by the company, leaving him obligated only to convey the legal title, or that the company declined to take the property for the stock, in which the defendant deemed it advisable to acquiesce, under the circumstances referred to. Under the former view, if the act of the executive committee in March, 1908, although ratified by the stockholders at the succeeding annual meeting, was invalid for any reason, the fact remains that no deed was demanded and no stock issued or tendered; and if a surrender of the property accompanied by a refusal to issue the stock was invalid as a fraud upon creditors the liability of the defendant, if any, would not be upon his subscription, or to pay for stock, nor would the action that was brought and is here to be determined on error be the proper remedy. But we think the latter view, viz.: that the company declined to take the property and thereby fulfill the

conditions of the subscription is the correct one, in view of all the evidence in the case. Although the resolution of March 11, 1908, recites the non-delivery of the deed as a ground for directing that the stock be not issued, it seems to have been so recited, not as the primary reason for the action taken, but to show that the company was in a position to withdraw from its acceptance of the subscription on the proposed conditions, which acceptance by its terms, authorized the issuance of the stock only upon a delivery of a deed to the property. There is nothing to show a refusal on defendant's part to deliver the deed, but the fair implication is that he was ready and willing to deliver it, and refrained from doing so because of the feeling among the stockholders that they did not want the property. It is argued that the defendant, as secretary, might have issued the stock to himself. But the form of certificate of stock adopted by the company required the signature of the president as well as that of the secretary; and the defendant, no doubt, felt, as well he might, that he would not be justified in using his position or authority as secretary to complete the transaction between himself and the company by issuing and delivering the stock to himself, or accepting for the company a delivery of the deed, in view of the opposition on the part of many of the stockholders, including the manager of the company's business, to taking the property.

We think it is fairly to be implied from the evidence, if not directly stated, that in offering the property and in acting upon the offer the thought or expectation was that it would furnish a suitable location and accommodation for the company's business; in other words, that if taken the property would be occupied and used as the company's place of business. The objection to the property for that purpose that afterwards developed was not confined to the proposed new stockholders, but it appears that soon after the company began business some of the stockholders became dissatisfied with the conditions of the defendant's subscription or the action taken thereon, which grew into a persistent

opposition to taking the property and defendant's connection with the company, at least upon the terms of his subscription; so that as early as November, 1907, plans for another building in a different location were discussed. Dr. Monahan, who was vice president of the company and a member of the executive committee, testified to. such facts; he says that a "large number" of the stockholders were dissatisfied, that they wanted to get the defendant out, as the store was too small, that "the store was too small to handle the business of the corporation; the corporation had done a big business and was crowded for room, and their object was to get out of this place and build a new building, sufficiently large to accommodate the growing business." The witness states that this condition existed before the end of the summer of 1907, and that the defendant felt that because of the friction thus caused he ought to get out. He further testified that such pressure was brought upon the defendant "that summer that he was deliberately beaten upon the street," and he (the witness) waited upon him as his physician, that he (the defendant) "was knocked down and knocked insensible, too." These facts, we think, account for the non-delivery of the deed, and the failure of the company to demand it and to issue or tender the stock.

It is unreasonable to view defendant's conduct as a waiver of the conditions to his subscription or as having estopped him from denying a liability .to pay in money the par value of the stock subscribed for. Finally, the matter was settled by the action taken by the executive committee in March, 1908. It appears that the resolution was drawn by the legal adviser of the company, who was also a stockholder; and we think it was intended as a refusal to take the property, and that such is its effect, when considered in connection with the facts and circumstances leading up to it, whereby the company failed to comply with the conditions of the subscription. Although some of the witnesses speak of turning back or canceling the Terwilliger stock as the object or result of the March resolution, that is not, strictly, a cor-

rect explanation of what was done, as we understand the circumstances. Except conditionally, awaiting the exchange of the property for the stock, the defendant had no stock, and none was turned back or canceled. In March, 1908, the parties believed the company to be solvent. Mr. Fry, the manager, testified that the company was then solvent. And after that meeting some of the proposed new stockholders were secured, to whom were issued at least eighteen shares of stock upon full payment in money.

Counsel complains of the absence from the former opinion of any reference to a case, which, it is claimed, is on all fours with the case at bar, and sustains the contention that defendant is liable in this action. The case referred to is Singer, Nimick & Co. v. Given, 61 Ia. 93, 15 N. W. 858. Although it was not mentioned in the former opinion, it was not overlooked. We did not then and do not now regard it as a case on all fours with this case. It differs from this case upon the facts in at least two important particulars. If the subscription in that case was conditional, and the evidence on the subject seems to have been conflicting, the condition was that the amount subscribed be paid in buildings of the subscriber and his partner, but without expressly providing against liability, as was done in the case at bar, if the property was not taken. Again, although the corporation in that case went into possession of the property without a conveyance, and occupied it for a time, the company afterwards surrendered the same to the receiver of the defendant subscriber and his partner, and canceled the subscription. Thus, the property offered in payment was not the sole property of the defendant in that case, but it belonged to him and his partner, and the affairs of the partnership having gone into the hands of a receiver, and the property not having been conveyed to the company, the company surrendered the property to the receiver; evidently, it would seem, for the reason that the receiver had the better right to it. The court said that if the defendant had conveyed the property, as he alleges he agreed to do, the company would have been, by that much, the more able

to pay its creditors. We thing it not improper to infer from that statement that the failure of the defendant to convey the property caused its surrender to the receiver, and it -is not at all improbable, though the fact is not stated in the opinion, that the property was surrendered upon the receiver's demand. It is certainly reasonable to suppose that the company in surrendering its possession acted on the theory that it had no right to retain possession as against the receiver. The latter may, indeed, have sued to recover possession. The defendant having become incapable of conveying the property, and having neglected to convey it while he had the power, if he was able at any time to do so, he was by his own fault unable to comply with his offer of the property in payment of his subscription. A very different situation from that in the case at bar.

Prior to the commencement of this action an order was made in the United States District Court, wherein the bankruptcy matter was pending, authorizing the trustee to institute and prosecute the suit and expend therein a stated amount. It was suggested in the argument at the original hearing, and it is stated in the brief filed in support of the petition for rehearing, that by said order, the United States Court held that the defendant was liable. We would not be inclined, ordinarily, to notice a proposition so entirely without merit, but its repetition in the brief now being considered indicates that counsel relies upon the order permitting the bringing of the suit and the expenditure of money in doing so as a decision contrary to the conclusion of this court upon the facts of the case. Indeed, the brief states that by said order the court held, "under the facts of this case," that the defendant was liable. It would be evident, without any showing as to such an order except that it was made, that the court making it did not decide the question to be ulitimately determined in the suit authorized to be brought, but only that the showing was sufficient to justify an order permitting the bringing of the suit. That would be evident from the nature of the proceeding. Such an order would not in any sense control or influence the ultimate determina-

tion of the suit upon the facts, even if brought in the same court in which the order had been entered. It would have no force in that or any other court as a precedent to be followed or considered in determining, upon the facts disclosed in the trial of the case brought pursuant to the order, the question as to the right or liability sought to be established by the suit. And we think this is well understood by the profession. But there is nothing in the record here to show that the facts appearing on the trial of this case were before the United States Court, or the Referee in Bankruptcy, on the hearing of the trustee's petition for such order. That petition and the order made by the Referee are all we find in this record touching that proceeding, aside from the averments of the petition in this suit as to the order authorizing it to be brought, which add nothing to the showing made by the petition for the order allowing the trustee to sue. The petition in the United States Court alleged that defendant had subscribed for 25 shares of stock at the organization meeting, that he had been elected as a director at such meeting and continued as director and secretary until the corporation was adjudged bankrupt, and had not paid for said stock except one share; but nothing was alleged as to the terms or conditions of the subscription, or the occurrences with reference to the stock after the organization meeting, other than, as above stated, that the stock had not been paid for. Nor does the order show that the matter to be determined by the authorized suit was decided by the referee or court. It recites what was decided as follows: "And this Referee having heard the arguments of counsel, and being fully advised in the premises does find that there is probable cause that a right of action exists in favor of said trustee, and against Charles D. Terwilliger, and it is therefore hereby ordered," &c. These words do not seem to furnish even a plausible ground for asserting that either the referee or the court, in making the order aforesaid, held that the defendant was liable.

A rehearing will be denied.

BEARD, J., and SCOTT, J., concur.